61 A.3d 1

**Angel OCHOA**

v.

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES.**

**No. 123, Sept. Term, 2011.**

Court of Appeals of Maryland.

Jan. 30, 2013.

Reconsideration Denied March 21, 2013.

Bell, C.J., filed dissenting opinion joined by Greene, J.

Eric H. Kirchman (Kirchman & Kirchman, Rockville, MD), on brief, for appellant.

Stuart M. Nathan, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD, and Lisa O. Arnquist, Asst. Atty. Gen., Department of Public Safety and Correctional Services, Pikesville, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

ADKINS, J.

In this case we must decide how Maryland's sex-offender registration statutes apply to Appellant Angel Ochoa, considering multiple statutory revisions since his 1998 conviction of two sex offenses. At the time of his conviction, Ochoa was subject to a ten-year term of registration. The statutes have since changed to require lifetime registration for certain classes of sex offenders.

Ochoa sought declaratory relief in 2010, claiming that he had satisfied the ten-year registration requirement accompanying his conviction and that he was not subject to lifetime registration under Section 11–707(a)(4)(iii) of the Criminal Procedure Article ("CP"). Md.Code (2001, 2008 Repl.Vol., 2010 Cum.Supp.), § 11–707(a)(4)(iii) of the Criminal Procedure Article. The Circuit Court for Prince George's County denied Ochoa's claim and declared he was subject to lifetime registration. Ochoa appealed to the Court of Special Appeals, but this Court, on its own motion, granted *certiorari* to hear his case.

Ochoa appealed on the following question:

Is the Appellant subject to life time registration as a Tier III sex offender, pursuant to § 11–701, *et seq, Criminal Procedure Article of the Annotated Code of Maryland* when the offenses for which the Appellant is compelled to register are not listed in the statute?

We shall hold that Ochoa is required to register for life as a sex offender under CP § 11–707(a)(4)(iii) because his 1998 convictions make him a tier III sex offender under the current statutory scheme, and he was subject to lifetime registration on September 30, 2010, making retroactive application of the statute proper by its own terms.

## Facts and Legal Proceedings

Angel Ochoa was indicted in August 1997 on one count of child abuse and three counts of third degree sexual offense, stemming from sexual contact he had with his eleven-year-old stepdaughter "on or about between January 1, 1997 and June 30, 1997." On January 30, 1998, Ochoa pleaded guilty to the child-abuse count and one count of sexual offense, and prosecutors entered a *nolle prosequi* to the other two counts. Specifically, Ochoa pleaded guilty to violations of Article 27, Section 35C (child sexual abuse) and Article 27, Section 464B (third-degree sexual offense) of the Annotated Code of Maryland. He was convicted and sentenced to two years' imprisonment, with all but one day suspended, and three years of supervised probation, which he successfully completed.

Upon conviction, Ochoa was required to register as a sex offender for ten years. Since his conviction, however, the statutory framework governing sex-offender registration has changed significantly, requiring lifetime registration for those convicted of many sexual offenses.[1] On April 6, 2010, Ochoa filed a complaint for declaratory relief in the Circuit Court for Prince George's County, seeking a declaration that he had not committed a crime that required lifetime registration under CP § 11–707(a)(4)(iii). After the Department of Public Safety

---

1. We shall discuss these changes in full below.

and Correctional Services ("the Department") answered the complaint, Ochoa moved for summary judgment, which the Department opposed. After a hearing, the Circuit Court issued an order on July 12, 2011, denying Ochoa's motion and entering judgment in favor of the Department. The Circuit Court declared that Ochoa is required to register as a tier III sex offender for life pursuant to CP § 11–707(a)(4)(iii).

Ochoa timely appealed to the Court of Special Appeals, but on March 6, 2012, this Court, on its own motion, issued a writ of certiorari before review by the intermediate appellate court. *See Ochoa v. Dep't of Corr. & Pub. Safety,* 425 Md. 227, 40 A.3d 39 (2012).

### Discussion

We are tasked with deciding whether the lifetime sex-offender registration requirements of CP Section 11–707(a)(4)(iii), effective October 1, 2010, apply to Ochoa based on his 1998 sex-offense convictions. By its own terms, CP § 11–707 applies only to sex offenders who were "subject to registration [under Title 7 of the Criminal Procedure Article] on September 30, 2010." [2] Md.Code (2001, 2008 Repl.Vol., 2010 Cum.Supp.), § 11–702.1 of the Criminal Procedure Article. Under CP § 11–707, the term of registration for sex offenders varies depending on the severity of their crimes. *See* CP § 11–707. The longest term of registration—for "the life of the registrant"—is required of "tier III sex offender[s.]" CP § 11–707(a)(4)(iii). Accordingly, in determining whether Ochoa is subject to lifetime registration under CP Section 11–707(a)(4)(iii), we must decide first whether he was required to register as a sex-offender on September 30, 2010 and second whether he is a tier III offender. We answer both questions

---

2. In addition, the sex-offender registration section applies retroactively in other circumstances as well but those other circumstances do not apply to this case. *See* Md.Code (2001, 2008 Repl.Vol., 2010 Cum. Supp.), § 11–702.1 of the Criminal Procedure Article ("CP") (stating, for example, that the statute applies retroactively to sex offenders "convicted of any crime on or after October 1, 2010" if they have "a prior conviction for an offense for which registration as a sex offender is required under this subtitle").

in the affirmative and conclude that Ochoa is subject to lifetime registration based on his 1998 convictions of sexual child abuse and sexual offense in the third degree.

## I.

### Sex–Offender Registration Requirements at the Time of Ochoa's Conviction in 1998

When Ochoa was convicted in 1998 of violating sections 35C (child sexual abuse) and 464B (third degree sexual offense) of the former Article 27, he became subject to a ten-year registration requirement. The statute in effect at the time required "child sexual offenders" to "register with a local law enforcement agency annually for 10 years[.]" Md.Code (1957, 1996 Repl.Vol.), Article 27, § 792(i). A "child sexual offender" was defined as a person who had "been convicted of violating § 35C ... for an offense involving sexual abuse" or who had "been convicted of violating any of the provisions of §§ 462 through 464B ... for an offense involving an individual under the age of 15 years." Art. 27, § 792(a)(2)(i) & (ii).

As Ochoa was convicted of violating both of these statutes in 1998, he was considered a "child sexual offender" under the statutory scheme then in effect and was subject to the ten-year registration requirement. He was therefore required initially to register as a sex offender from January 30, 1998 to January 30, 2008. *See* Art. 27, § 792(i).

### Sex–Offender Registration Requirements as of 1999

In 1999, for the purpose of amending "the laws concerning the registration requirements and procedures concerning individuals convicted of certain crimes against children, sexually violent offenses, or other sexual offenses," the General Assembly made significant revisions to sex-offender registration requirements. *See* Chapter 317 of the Acts of 1999. Specifically, it subjected to lifetime registration three types of sex offenders: sexually violent predators, child sexual offenders and sexually violent offenders, convicted of certain crimes. *See* Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Article

27, § 792(d)(2), (3), (4) & (5)(ii). The statute continued to define a "child sexual offender" the same way it did at the time of Ochoa's conviction in 1998 as an individual "convicted of violating § 35C of [Article 27] for an offense involving sexual abuse" or "any of the provisions of §§ 462 through 464B . . . for an offense involving an individual under the age of 15 years." *Compare* Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 792(a)(2)(i) & (ii), *with* Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Article 27, § 792(a)(2)(i) & (ii).

The statute further defined a "sexually violent offender" as an individual who had been convicted of a "sexually violent offense," which was in turn defined as a violation of "any of the provisions of § 462, § 463, § 464, § 464A, § 464B, or § 464F of [Article 27]." Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Art. 27, § 792(a)(10) & (11). Under the statute, sexually violent offenders convicted of a "second or a subsequent sexually violent offense" were considered "sexually violent predators." Art. 27, § 792(a)(12).

Under Section 792(d)(5), sexually violent predators were automatically required to register for life, and sexually violent offenders and child sexual abusers were required to do so if they were convicted of "a violation of any of the provisions of §§ 462 through 464B of this article." Chapter 317 of the Acts of 1999; Art. 27, § 792(d)(5)(i) & (ii).

Upon making these changes, the General Assembly limited the retroactive application of the statute to "sexually violent offenders" who have committed offenses "on or after July 1, 1997," but expressly stated that it does apply retroactively to child sexual offenders like Ochoa who (1) were already subject to the ten-year registration requirement under Article 27, Section 792(i) and (2) "who committed the sexual offense before the effective date of this Act." *See* Chapter 317 of the Acts of 1999, Sections 4 & 5; Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 792(i) ("[Be it further enacted, that] a child sexual offender who is subject to the requirements of Chapter 142 of the Acts of the General Assembly of 1995 and who committed

the sexual offense before the effective date of this Act is subject to the requirements of this Act.").[3]

Under the 1999 revisions, as an individual who violated Sections 35C (child sexual abuse) and 464B (third degree sexual offense) of the former Article 27, Ochoa was both a "sexually violent offender" and a "child sexual offender." Although as a "sexually violent offender" who committed the qualifying offenses prior to July 1, 1997, Ochoa was not subject to the statute's application, as a "child sexual offender," Ochoa met both requirements that triggered retroactivity: he was subject to the ten-year registration requirement at the time of the revision and committed his crimes before the effective date of the revision. *See* Chapter 317 of the Acts of 1999, Sections 4 & 5; Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 792(i).

It is clear to this Court, then, that Ochoa was subject to lifetime registration as of these 1999 revisions. Furthermore, as sex offender required to register for life since 1999, Ochoa continued to be subject to lifetime registration on September 30, 2010, making the retroactive application of CP § 11–707(a)(4)(iii) proper in this case. Because, Ochoa argues, however, that subsequent amendments to sex-offender registration requirements somehow absolved him of his registration responsibilities, we will examine these subsequent revisions as well.

### Sex–Offender Registration Requirements After the 2002 Amendments

Ochoa directs us to CP § 11–707 that came into effect on October 1, 2010 and argues that under that law he was not required to register for life based on his 1998 convictions. As stated above, for the lifetime registration requirement of CP § 11–707 to apply retroactively, the sex offender had to be "subject to registration [under Title 7 of the Criminal Procedure Article] on September 30, 2010." Md.Code (2001, 2008

---

**3.** Chapter 142 of the Acts of 1995 was codified in Article 27, Section 792 at the time of Ochoa's conviction.

Repl.Vol., 2010 Cum.Supp.), § 11–702.1 of the Criminal Procedure Article.

In accordance with CP § 11–707 in effect on September 30, 2010, the following classes of sex offenders were required to register for life: "sexually violent predator[s]," offenders "convicted of a sexually violent offense," offenders "convicted of a violation of § 3–602 of the Criminal Law Article for commission of a sexual act involving penetration of a child under the age of 12 years," and offenders who had been convicted of "a prior crime as a child sexual offender, an offender, or a sexually violent offender." Md.Code (2001, 2008 Repl.Vol., 2009 Cum.Supp.), § 11–707(a)(4)(ii) of the Criminal Procedure Article. Ochoa argues that his 1998 convictions do not fall under either of these listed categories of sex offenders.

Ochoa's arguments require us to delve further into the legislative history and analyze how these registration provisions became codified. In doing so, we must fulfill our obligation to "ascertain and effectuate the real and actual intent of the Legislature." *McCloud v. Dep't of State Police*, 426 Md. 473, 479, 44 A.3d 993, 996 (2012) (quotations omitted).

Since the 1999 revisions to the sex-offender registration laws that required Ochoa to register as a sex offender for life, the General Assembly has made several other changes. First, in 2002 the General Assembly enacted a major overhaul of the State's criminal law statutes, where it moved many provisions of Article 27 into a new Criminal Law Article. *See* Chapter 26 of the Acts of 2002. As a result, the Article 27 crimes of which Ochoa was convicted received different code numbers. Specifically, the former Article 27, Section 35C (child sexual abuse) became Section 3–602 of the Criminal Law Article, and the former Article 27, Section 464B (sexual offense in the third degree) became Section 3–307 of the Criminal Law Article. *See id.* Both sections were accompanied by a revisor's note stating the new sections consisted of "new language derived without substantive change from" the former sections.[4] *Id.*

---

4. These revisor's notes also mentioned several cosmetic and semantic changes, implemented for clarity and consistency and not affecting the substance of the sections. *See* Chapter 26 of the Acts of 2002.

This recodification of the State's criminal laws necessitated revisions to the criminal law references in the Criminal Procedure Article. The General Assembly thus also updated the Criminal Procedure Article, which details the sex-offender registration term requirements, by replacing cross-references to the repealed provisions of Article 27 with cross-references to the provisions transferred to the new Criminal Law Article. *See* Chapter 213 of the Acts of 2002 ("[For] the purpose of correcting certain cross-references to the Criminal Law Article in the Annotated Code of Maryland...."). Specifically, the requirement of a lifetime "term of registration" for sexual offenders "convicted of any violation of Article 27, §§ 462 through 464B of the Code"—which includes Ochoa's conviction for third degree sexual offense—was replaced by "any violation of §§ 3–303 through 3–307 of the Criminal Law Article." *Id.*

Second, during the same 2002 legislative session, as part of the effort to alter the definition of " 'a sexually violent offense' to include certain crimes committed against a person under a certain age," the General Assembly also changed the description of the offenses subject to a lifetime registration requirement from the code-specific reference to codified offenses, *i.e.* "any violation of Article 27, §§ 462 through 464B of the Code," to a general term of "a sexually violent offense." [5] *See* Chapter 194 of the Acts of 2002; Md.Code (2001, 2001 Repl.Vol., 2002 Cum.Supp.), § 11–707(a)(4)(ii)(2) of the Criminal Procedure Article.

---

5. Both the revisions of Chapter 194 (changing the Article 27 cross-reference to a "sexually violent offense") and Chapter 213 (changing the Article 27 cross-reference to "any violation of 3–303 through 3–307 of the Criminal Law Article") were approved on April 25, 2002. The revisions of Chapter 194, however, went into effect on September 30, 2002, and the revisions of Chapter 213 went into effect on October 1, 2002. Although technically, by the time the revisions of Chapter 213— changing the cross-references from Article 27 to the newly codified sections of the Criminal Law Article—went into effect, CP § 11–707(2)(4)(ii) no longer contained the cross-reference to Article 27, we discuss these changes in the reverse order for the sake of clarity.

Section 11–701(k) of the Criminal Procedure Article further provided definitions of sexually violent offenses subject to the lifetime registration requirement of CP § 11–707(a)(4)(ii). One such definition of a "sexually violent offense" was "a violation of §§ 3–303 through 3–307 or §§ 3–309 through 3–312 of the Criminal Law Article." CP § 11–701(k)(1). Another definition included an "assault with intent to commit rape . . . or a sexual offense . . . as prohibited on or before September 30, 1996, under the former Article 27, § 12 of the Code." CP § 11–701(k)(2). The General Assembly provided that these changes were to apply retroactively to sex offenders like Ochoa, who were "convicted of an offense committed before July 1, 1997, and who [were] under the custody or supervision of a supervising authority on October 1, 2001." CP § 11–702.1(a).

In Ochoa's opinion, however, he has not been convicted of a "sexually violent offense." With respect to the first definition of "sexually violent offense" under CP Section 11–701(k)(1), Ochoa posits that he:

> ha[d] not been convicted of a sexually violent offense as it was defined by the *Annotated Code of Maryland* on September 30, 2010. While Ochoa had been convicted of two offenses under Article 27 he had not been convicted of violating any provision of the *Criminal Law Article.*

To be sure, Ochoa was not literally convicted of violating any provision of the current Criminal Law Article, if only for the strikingly obvious reason that the Criminal Law Article did not exist at the time of his violation or conviction. As we discussed above, however, the third degree sexual offense under Section 464B of Article 27—one of the crimes of which Ochoa was convicted in 1998—was recodified as Section 3–307 of the Criminal Law Article. *See* Chapter 26 of the Acts of 2002. Thus, at least one of Ochoa's 1998 convictions falls under the first definition of "sexually violent offense," requiring Ochoa to register as a sex offender for life under CP § 11–707(a)(4)(ii)(2).

Ochoa supplements his legislative-intent argument by directing our attention to the second definition of a "sexually violent offense." As Ochoa correctly states, this definition included "assault with intent to commit rape in the first or second degree or a sexual offense in the first or second degree as prohibited on or before September 30, 1996, under former Article 27, § 12 of the Code[.]" Md.Code (2001, 2008 Repl.Vol., 2009 Cum.Supp.), § 11–701(k)(2) of the Criminal Procedure Article. Under Ochoa's reading of this statute, however, because the statute refers to Article 27, Section 12, if the General Assembly had intended to classify as "sexually violent offenses" other offenses under Article 27—like his convictions under former Article 27, Sections 35C and 464B—it would have expressly stated so as well.

This argument misinterprets the General Assembly's reason for specifying the former Article 27, Section 12 in the statute. The crimes in that section were abolished in 1996 when the General Assembly substantively revised the State's assault laws. *See* Chapter 632 of the Acts of 1996. As the Department argues:

> Thus, there is no directly analogous statute in the new Criminal Law Article to Article 27, § 12 and, therefore, no cross-reference that could have been updated. In other words, convictions under Article 27, § 12 were the only ones that the General Assembly continued to refer to by the old statutory reference because they were the only ones that did not have a new statutory reference. The General Assembly's goal was to ensure that individuals convicted of Article 27, § 12 violations before the statute's abolition in 1996 would still be required to register, not to ensure everyone convicted of any other sexual offenses before September 30, 2002 be relieved from this requirement.

We agree with this explanation and the view of the law. The General Assembly has increased the length of the registration terms and added retroactivity provisions with an eye toward strengthening this State's sex-offender laws. It is a reasonable interpretation of the statute then, consonant with legislative intent, that certain convictions under the former

Article 27—including Ochoa's conviction for third degree sexual offense—are not excluded from the definition of a "sexually violent offense," as defined on September 30, 2010. *See, e.g., McCloud*, 426 Md. at 480, 44 A.3d at 997 ("Additionally, we must always give the statute a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." (quotations omitted)).

The 2002 revisions were intended to be "nonsubstantive," unless expressly provided, and "may not otherwise be construed to render any substantive change in the criminal law of the State." *See* Chapter 26, Section 13 of the Acts of 2002. We have already seen that the sections relevant to Ochoa were "derived without substantive change" from the former laws. *See id.* As the Department argues, "[t]here is no indication in the statute or elsewhere of any intent by the General Assembly to use those 'nonsubstantive revisions' to radically alter the law as to who was required to register as a sex offender and for how long registration was required." This is plainly true, and we cannot imagine that when the General Assembly made clerically necessary updates to statutory cross-references, it would have intended to strip away the registration requirements for *all* sexual offenders convicted under the former Article 27. Such an interpretation would directly undermine the clear legislative intent to gradually strengthen sex-offender statutes.

Accordingly, regardless of which version of the sex-offender registration statute we apply, we find that Ochoa's 1998 convictions of child sexual abuse and third degree sexual offense made him subject to lifetime registration on September 30, 2010, requiring retroactive application of Title 7 of the Criminal Procedure Article. *See* Md.Code (2001, 2008 Repl.Vol., 2010 Cum.Supp.), § 11–702.1 of the Criminal Procedure Article.

## II.

### Ochoa's 1998 Crimes Under the Tier System

Having found that Ochoa was required to register as a sex offender on September 30, 2010, making retroactive appli-

cation of the statute proper in this case, we next turn to Ochoa's status under the tier sex offender classification of CP § 11–707(a)(4)(iii). The tier-based system replaced the former sex-offender designations of "sexually violent predator," "sexually violent offender," and "child sexual offender" in 2010. *See* Chapters 174 and 175 of the Acts of 2010. Section 11–701(q) of the Criminal Procedure Article defines a "tier III sex offender" as a person who has been convicted of a number of offenses, including Section 3–602 ("Sexual abuse of a minor") and Section 3–307(1)–(3) ("Sexual offense in the third degree") of the Criminal Law Article. Md.Code (2001, 2008 Repl.Vol., 2010 Cum.Supp.), § 11–701(q)(1) & (2) of the Criminal Procedure Article.

As discussed above, during the 2002 recodification of Maryland's criminal laws, Section 3–602 ("Sexual abuse of a minor") of the Criminal Law Article replaced the former Article 27, Section 35C (child sexual abuse), and Section 3–307(1)–(3) ("Third degree sexual offense") of the Criminal Law Article replaced the former Article 27, Section 464B ("Third degree sexual offense"). *See* Chapter 26 of the Acts of 2002. Both of these newly codified offenses were accompanied by a revisor's note stating the new sections consisted of "new language derived without substantive change from" the former sections. *Id.*

As a sex offender convicted both of a violation of Article 27, Section 35C and a violation of Article 27, Section 464B, Ochoa cannot escape classification as a tier III sex offender under CP Section 11–701(q)(1) & (2). In the eyes of the General Assembly, whether codified under the former Article 27 or the current Criminal Law Article, the offenses of which Ochoa was convicted—child sexual abuse and third-degree sexual offense—are the types of sex offenses that require the longest period of registration.

Thus, Ochoa's 1998 convictions for child sexual abuse and third degree sexual offense make him a tier III sex offender under CP § 11–701(q)(1) and (2). As a sex offender subject to registration on September 30, 2010, Ochoa must comply with

the registration requirements of CP § 11–707(a)(4)(iii) and register for life.

## III.

### Ochoa's Assertion That Sex–Offender Registration Is Penal in Nature

■ As a final argument, Ochoa also insists that the sex-offender registration statute is penal and must be "strictly construed against the State." Although Ochoa quotes at length one case in support of this proposition, he makes no effort in his brief to apply it to his own case or develop it in any meaningful way. For example, he does not argue that the alleged penal nature of the statute bars retroactive application of the 1999 law imposing a lifetime registration under the principles of due process.[6] *See* Maryland Rule 8–504(a)(5) (requiring "[a]rgument in support of a party's position"). We have held that "arguments not presented in a brief or not presented with particularity will not be considered on appeal." *Klauenberg v. State*, 355 Md. 528, 552, 735 A.2d 1061, 1074 (1999) (citation omitted) (declining to address an appellant's argument that was merely "lumped in" with another). Considering these principles, we need not address this issue.

### Conclusion

We agree with the Department that the 2002 revisions left unchanged the requirement in place since 1999 that all sex offenders convicted of child sexual abuse—a group that includes Ochoa—register for life. Furthermore, even under the 2002 revisions, Ochoa was required to register for life as an offender who has committed a "sexually violent offense." Finally, under the most recent version of the sex-offender registration statute, Ochoa continues to be required to register for life because he is a tier III sex offender who was required

---

**6.** This issue is one of the questions on which *certiorari* was granted in *Doe v. Department of Public Safety & Corrections*, No. 125 (2011 Term), which was argued on September 7, 2012.

to register on September 30, 2010. His term of registration remains at life, as it has been since the 1999 revisions.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**

BELL, C.J., and GREENE, J., dissent.

BELL, C.J., dissenting, in which GREENE, J., joins.

## I.

The petitioner, Angel Ochoa, in January, 1998, in the Circuit Court for Prince George's County, pled guilty to, and was convicted of, child abuse charges, i.e. of violating Md.Code (1957, 1996 Repl.Vol.) Article 27, § 35C, "[c]ausing abuse to a child," and Article 27, § 464B, "[t]hird degree sexual offense." Those crimes are currently codified, without substantive or definitional change, at Md.Code (2002, 2012 Repl.Vol.), § 3–602 of the Criminal Law Article ("CL"),[1] and CL § 3–307,[2]

---

**1.** Md.Code (2002, 2012 Repl.Vol.), § 3–602(b)(1) of the Criminal Law Article ("CL"), "Sexual abuse of a minor," provides that "[a] parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not cause sexual abuse to the minor."

**2.** CL § 3–307, "Sexual offense in the third degree," states, in relevant part:

"(a) *Prohibited.*—A person may not:

"(1)(i) engage in sexual contact with another without the consent of the other; and

"(ii) 1. employ or display a dangerous weapon, or a physical object that the victim reasonably believes is a dangerous weapon;

"2. suffocate, strangle, disfigure, or inflict serious physical injury on the victim or another in the course of committing the crime;

"3. threaten, or place the victim in fear, that the victim, or an individual known to the victim, imminently will be subject to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

"4. commit the crime while aided and abetted by another;

"(2) engage in sexual contact with another if the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual, and the person performing the act knows or reasonably should know the victim is a mentally defective individual,

respectively. He was sentenced to two years imprisonment, with all but one day suspended, and three years of supervised probation upon his release and, pursuant to Article 27, § 792(i) [3], he was required, for ten years, to register as a "child sexual offender." [4]

Statutory changes to the registration scheme, in 1999, then again in 2010, introduced a lifetime registration requirement for certain classes of sex-offenders. *See* Md.Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, § 792(d)(5)(ii); [5] Md.Code

---

a mentally incapacitated individual, or a physically helpless individual;

"(3) engage in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim;

"(4) engage in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 21 years old; or

"(5) engage in vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old."

3. Md.Code (1957, 1996 Repl.Vol.), Article 27, § 792(i) provides:
"A child sexual offender shall register with a local law enforcement agency annually for 10 years after:
"(1) The last date of release;
"(2) The offender is granted probation before judgment, probation after judgment, or a suspended sentence; or
"(3) The offender receives a sentence that does not include a term of imprisonment."

4. "Child sexual offender" is partly defined, in § 792(a)(2), as a person who:
"(i) Has been convicted of violating § 35C of this article for an offense involving sexual abuse;
"(ii) Has been convicted of violating any of the provisions of §§ 462 through 464B of this article for an offense involving an individual under the age of 15 years . . . ."

5. Md.Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27 § 792(d)(5) provides for life term registration upon commission of certain offenses if
"1. The registrant has been determined to be a sexually violent predator in accordance with the procedures described in subsection (b) of this section;
"2. The registrant has been convicted of a violation of any of the provisions of §§ 462 through 464B of this article; or

(2001, 2008 Repl.Vol., 2011 Supp.) § 11–707 of the Criminal Procedure Article ("CP").[6] Since the latter amendment, reflected in CP § 11–707, potentially subjected the petitioner's convictions, and thus the petitioner, to its life term registration requirement, the petitioner filed, in the Circuit Court for Prince George's County, an action for declaratory judgment, in which, pointing out that he had already met his obligation to register for ten years, he sought a declaration that the statutory changes did not impose retroactively a lifetime registration requirement upon him. Agreeing with the State, that CP § 11–707(a)(4)(iii) applied to the petitioner retroactively and that, therefore, he was, indeed, required to register for life, the Circuit Court denied the petitioner's motion for summary judgment, and entered the opposite declaration.

The petitioner noted an appeal to the Court of Special Appeals. Prior to its review, however, this Court, on its own initiative, issued a writ of certiorari, *Ochoa v. Department of Corrections and Public Safety,* 425 Md. 227, 40 A.3d 39 (2012), to decide the following question:

> "Is the Appellant subject to life time registration as a Tier III sex offender, pursuant to § 11–701, *et seq, Criminal Procedure Article of the Annotated Code of Maryland* when the offenses for which the Appellant is compelled to register are not listed in the statute?"

The majority, siding with the Circuit Court, answers this question in the affirmative, and holds that CP § 11–707(a)(4)(iii) applies retroactively to require the petitioner to

---

"3. The registrant has been *previously* required to register *and* has been convicted of a *subsequent* violation of any offense listed in subsection (a)(2), (6), or (11) of this section."

**6.** Md.Code (2001, 2008 Repl.Vol., 2011 Supp.) § 11–707(a)(4) of the Criminal Procedure Article delineates, in relevant part, the terms of registration for sex offenders as follows:

"(i) 15 years, if the registrant is a tier I sex offender;

"(ii) 25 years, if the registrant is a tier II sex offender;

"(ii) the life of the registrant, if the registrant is a tier III sex offender...."

A Tier III sex offender, defined by CP § 11–701(q)(1)(ii), includes an individual who has committed a violation of CL § 3–602.

register for life as a Tier III sex offender. *Ochoa v. Department of Public Safety and Correctional Services,* 430 Md. 315, 319, 61 A.3d 1, 3 (2012). Because I believe that a criminal statute may not be applied retroactively in the absence of express language permitting such application and that, in this case, there is no such express language, I respectfully dissent.

## II.

Upon his conviction in 1998, the petitioner was subject to the requirements of Md.Code (1957, 1996 Repl.Vol.) Article 27, § 792, the statutory scheme then applicable to sexual offender registration criteria, terms and procedures. Therefore, upon conviction of child abuse, he became and was considered a "child sexual offender," defined by § 792(a)(2), in relevant part, as a person convicted either under Article 27, § 35C, or under § 464B. Consequently, the petitioner was required to comply with § 792's registration requirements, set forth in subsection (i), that a child sexual offender "register with a local law enforcement agency annually for 10 years...."

In 1999, the Legislature revised Article 27, § 792 and, for the first time, introduced life term registration for certain classes of sexual offenders. Specifically, Md.Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, § 792(d)(5) required a child sexual offender to register annually in person with a local law enforcement agency for

"(ii) Life if:

"1. The registrant has been determined to be a sexually violent predator [7] in accordance with the procedures described in subsection

---

7. Md.Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, § 792(a)(11) describes a "sexually violent offense" as "a violation of any of the provisions of § 462, § 463, § 464, § 464A, § 464B, or § 464F." Section 792(a)(12) defines "sexually violent predator" as an individual who "[i]s convicted of a second or subsequent sexually violent offense" and "[h]as been determined ... to be at risk of committing a subsequent sexually violent offense." The procedure for determining whether a person qualifies as a sexually violent predator is set forth in § 792(b).

(b) of this section;

"2. The registrant has been convicted of a violation of any of the provisions of §§ 462 through 464B of this article; or

"3. The registrant has been previously required to register and has been convicted of a subsequent violation of any offense listed in subsection (a)(2), (6), or (11) of this section."

This revision modified the term of registration for those who were convicted of a violation of § 464B, the same crime of which the petitioner was found guilty, from 10 years, to life. It also provided that § 792(d)(5)(ii)(3) applied retroactively under some, very limited circumstances.

The Legislature again revised Maryland's sex offender registration law in 2010, this time creating a tier system for categorizing sex offenses and delineating the specific term of registration for each tier. CP §§ 11–701—11–707. It also prescribed the conditions under which the new statutory scheme would apply retroactively. The new scheme, which took effect on October 1, 2010, includes in the category of Tier III sex offenders those individuals, like the petitioner, who have been convicted of "conspiring to commit, attempting to commit, or committing a violation" of CP §§ 3–307 and 3–602. *See* CP § 11–701(q)(1)(ii). CP § 11–707(a)(4) then sets forth the following registration terms:

"(i) 15 years, if the registrant is a tier I sex offender;

"(ii) 25 years, if the registrant is a tier II sex offender;

"(iii) the life of the registrant, if the registrant is a tier III sex offender. . . .

The retroactive application of Title 11's provisions is expressly limited by CP § 11–702.1, which states:

"(a) *In general.*—Notwithstanding any other provision of law to the contrary, this subtitle shall be applied retroactively to include a person who:

"(1) is under the custody or supervision of a supervising authority on October 1, 2010;

"(2) was subject to registration under this subtitle on September 30, 2010;

"(3) is convicted of any felony on or after October 1, 2010, and has a prior conviction for an offense for which registration as a sex offender is required under this subtitle; or

"(4) was convicted on or after October 1, 2010, of a violation of § 3–324 of the Criminal Law Article, regardless of whether the victim was a minor."

The majority does not disagree that this language clearly limits retroactive application to those individuals who were already subject to registration under Title 11, subtitle 7 upon its enactment in October 2010. Nevertheless, it concludes, reasoning, based on the 1999 statutory revision, that the petitioner was required by that legislation to register for life and, thus, because he was so required when the 2010 legislation was enacted, he is, in fact, subject to subsection (a)(2), notwithstanding that the term of his registration obligation—pursuant to the 1996 version of Article 27, § 792(a)(2)(i), *supra* note 4, the statute under which the obligation originally arose—was terminated in 2008. *Ochoa,* 430 Md. at 319, 61 A.3d at 3.

In arriving at this conclusion, as indicated, the majority relies primarily on the Legislature's 1999 revisions of the sex offender registration requirements as set forth in Article 27, § 792. *Id.,* 430 Md. at 319–20, 61 A.3d at 3–4. More particularly, the majority reasons that, although the petitioner was only required to register annually for ten years under the version of § 792 that was in effect upon his conviction in 1998, Md.Code (1957, 1996 Repl.Vol.) Article 27, § 792(i), the Legislature's 1999 revisions retroactively adjusted the term of his registration obligation to the duration of his life. *Ochoa,* 430 Md. at 320–22, 61 A.3d at 4–5. This conclusion is required, the majority explains, because of uncodified language—language that nowhere appears in the statute itself—in Ch. 317, Laws of 1999: "a child sexual offender who is subject to the requirements of Chapter 142 of the Acts of the General

Assembly of 1995 [8] and who committed the sexual offense before the effective date of this Act is subject to the requirements of this Act." *Id.,* 430 Md. at 320–21, 61 A.3d at 4 (quoting Chapter 317 of the Acts of 1999). Since, it then reasons, the petitioner was subject to Chapter 142 at the time of the 1999 revisions, and had committed the relevant crime prior to the enactment of those revisions, the term of his registration was, therefore, modified from 10 years to the duration of his life. *Id.,* 430 Md. at 319–20, 61 A.3d at 3–4. It is this analytical step that allows the majority to conclude, pursuant to CP § 11–702.1, that the petitioner is properly within the retroactive reach of the life term registration requirement of CP § 11–707(a)(4)(iii), being thus "subject to registration under [Title 11, Subtitle 7] on September 30, 2010," when it took effect. I disagree.

When we undertake to interpret a statute, our primary objective is, and must be, "to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160, 165 (2002); *Board of Education v. Zimmer-Rubert,* 409 Md. 200, 214, 973 A.2d 233, 241 (2009). In doing so, "we look first to the words of the statute, on the tacit theory that the Legislature is presumed to have meant what it said and said what it meant." *Witte,* 369 Md. at 525, 801 A.2d at 165. Accordingly, when the words of the statute "are clear and unambiguous, there is no need to search further" to determine legislative intent. *Smack v. Department of Health and Mental Hygiene,* 378 Md. 298, 304–5, 835 A.2d 1175, 1178 (2003) (citation omitted). We must also be mindful that "[w]ords may not be added to, or removed from, an unambiguous statute in order to give it a meaning not reflected by the words the Legislature chose to use. . . ." *Id.,* 378 Md. at 305, 835 A.2d at 1179 (citation omitted).

---

**8.** Chapter 142 of the Acts of 1995, applicable at the time of the petitioner's conviction, was codified as Md.Code. (1957, 1996 Repl.Vol.) Article 27, § 792.

In our effort to ascertain legislative intent, only when that intent is not clear on the face of the statute do we seek, from sources other than the words the Legislature used, to "discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision...." *Barbre v. Pope*, 402 Md. 157, 172, 935 A.2d 699, 708 (2007) (citation omitted); *see also Lockshin v. Semsker*, 412 Md. 257, 274, 987 A.2d 18, 28 (2010). Moreover, then other cardinal rules of statutory interpretation must be considered. One particularly applicable here is, we generally presume that "all statutes, state and federal, are intended to operate prospectively and the presumption is found to have been rebutted *only* if there are clear expressions *in the statute* to the contrary." *Bell v. State*, 236 Md. 356, 369, 204 A.2d 54, 61 (1964) (emphasis added); *see also Mason v. State*, 309 Md. 215, 219, 522 A.2d 1344, 1346 (1987); *Rigger v. Baltimore County*, 269 Md. 306, 310, 305 A.2d 128, 131 (1973). Where the Legislature does not express a clear intention that a statute be applied retroactively, we adhere to the "rule of lenity", which provides that "courts will not interpret a ... criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended." *Gardner v. State*, 420 Md. 1, 16, 20 A.3d 801, 811 (2011) (quoting *White v. State*, 318 Md. 740, 744, 569 A.2d 1271, 1273 (1990)) (internal quotation marks omitted); *see also Gargliano v. State*, 334 Md. 428, 437, 639 A.2d 675, 679 (1994). This rule "only informs our interpretation of a criminal statute when the standard tools of statutory interpretation fail to discern the intent of the Legislature." *Id.*, 420 Md. at 17, 20 A.3d at 811. Thus, the rule, rather than replacing the traditional process of statutory construction, "provides a mechanism for resolving ambiguity when legislative intent cannot be determined to any degree of certainty." *Id.*

Applying these principles to the statutes before us, I arrive at the opposite conclusion from that reached by the majority. The 1999 revisions to Article 27, § 792 do not expressly provide for retroactive application of life term registration to

individuals, like the petitioner, who were convicted prior to the implementation of those changes. The uncodified bill language upon which the majority relies to establish such retroactivity is, at best, ambiguous. Furthermore, this uncodified language is in conflict with the revised codified statutory language of § 792(d)(5)(ii)(3). This ambiguity fails to provide individuals such as the petitioner with sufficient notice as to the status of their original registration obligation under the 1996 version of the sex offender registration statute. In the absence of express language indicating a clear intent to apply a statute retroactively, we must adhere to our oft enunciated presumption against retroactive application. Furthermore, where, as here, the Legislature has not made its intent to increase retroactively the punishment for a conviction clear, the rule of lenity, which requires that we interpret the ambiguity in favor of the defendant, must apply.

The uncodified bill language of Chapter 317 of the Acts of 1999, on which the majority relies to establish retroactivity, is ambiguous. That language provides for retroactive application to "a child sexual offender who is subject to the requirements of Chapter 142 of the Acts of the General Assembly of 1995 and who committed the sexual offense before the effective date of [the] Act." Chapter 317, § 5 of the Acts of 1999. As the majority sees it, "Ochoa met both requirements that triggered retroactivity" because "[h]e was subject to those requirements at the time of the revision and committed his crimes before the effective date of the revision." *Ochoa*, 430 Md. at 321, 61 A.3d at 4. The uncodified language is unclear, however, as to what these requirements are, in other words, what triggers—what is the predicate for—retroactivity. Stated differently, the uncodified language leaves unclear what it means to have "committed" the offense before the effective date of the act, such that one is "subject to the requirements" of the pre–1999 version of § 792.

Implicit in the majority's conclusion that the petitioner falls within the ambit of this provision is an inference that the provision seeks to include not only those who committed their crimes prior to the date of enactment, but those who have

already been convicted and sentenced for those crimes. The language of the provision provides an insufficient basis for that conclusion. I agree that the first requirement—that the accused have committed his crimes prior to the effective date of the Act—is applicable to individuals such as the petitioner. The second, however, that the accused be subject to the requirements of Chapter 142 of the Acts of the General Assembly at the time the Act took effect, is much less clear. This is because Chapter 142, codified as Md.Code (1957, 1996 Repl.Vol.) § 792, is not only applicable to those who have been convicted of a sexual offense, but those who have been found not guilty of such offenses. *See* § 792(a)(2)(v) (stating that "child sexual offender" includes those who have been found *not* criminally responsible for violations of § 35C or any of the provisions of §§ 462 through 464B). It would appear, then, that the uncodified language seeks to include, within the reach of the 2000 statute, all individuals charged with a child sexual offense under the 1996 version of § 792. The language of § 792 as codified in the 2000 statute, however, suggests a different result. Specifically, given the opportunity to state, explicitly, within the body of the statute, its conditions for retroactive application, the Legislature only elected to permit, in § 792(d)(5)(ii)(3), retroactive application to those individuals who were "previously required to register" under the former statutory scheme, *and* who had then been "convicted of a subsequent violation of any offense listed in subsection (a)(2), (6), or (11)" of § 792. This is in clear conflict with the uncodified language, which purports to extend retroactive application to all individuals charged with a sexual offense.

An individual such as the petitioner, having been convicted as a sexual offender and, thus, already subject to the registration requirements under the former statute, could reasonably conclude, looking to the language of the statute, as he must, that his registration obligation remained unchanged. Without looking at the uncodified language, he would have no notice of the possibility that a larger group of sexual offenders were intended to be included within the statute's retroactive reach. Furthermore, looking to the uncodified language would only

further confuse the analysis: the uncodified language seeks to reach, retroactively, all individuals charged with a sexual offense under the 1996 version of the statute, while the actual language of the statute only extends retroactive application to those individuals who were required to register under the previous statute *and* who also have been convicted of a subsequent offense. This conflict renders the intent of the Legislature with regard to retroactivity ambiguous and, under the circumstances, makes its ascertainment not just difficult, but impossible. Had the Legislature intended to extend retroactive application to *all* individuals previously charged with a child sexual offense, rather than limit it to the specific circumstances set forth in Md.Code (1957, 1996 Repl.Vol., 2000 Supp.) subsection (d)(5)(ii)(3) of Article 27, § 792, it simply could have said so.

The matter is further muddied when we look to the evolution of the statutory scheme as a whole. The 1996 version of § 792, pursuant to which the petitioner's original ten-year registration obligation arose, made no mention of retroactive application. Indeed, the Attorney General, in a letter dated May 8, 1995, recognized that "any ex post facto problems with the bill were cured by § 3 of the bill, which provides that it is to be construed to apply *prospectively only.*" (Emphasis added). *See* Section 3, Chapter 142 of the Acts of 1995 ("this Act shall be construed only prospectively to apply to offenses that are committed after the effective date of this Act, and may not be applied or interpreted to have any effect on or application to any individual who commits an offense before the effective date of this act."). Pursuant to revisions made in 1999, the 2000 version of § 792 extended the registration period for a specific group of individuals who were previously required to register for a ten-year term only. *See* Md.Code (1957, 1996 Repl.Vol., 2000 Supp.) § 792(d)(5)(ii)(3). This very limited expansion did not include individuals who had only been convicted once. The uncodified language of the bill which resulted in those revisions, however, appears to provide otherwise, prescribing retroactive application to all individuals charged with a child sexual offense under the former version

of the statute, whether or not they were found criminally responsible. *See* Chapter 317, § 5 of the Acts of 1999; Md. Code (1957, 1996 Repl.Vol.) Article 27, § 792(a)(2)(v). The sex offender registration statute in place today, set forth in CP §§ 11–701—11–707, does, in contrast, address retroactivity in great detail, delineating four specific categories of previously convicted offenders who will be subject to the statute after its enactment. *See* CP § 11–702.1.

An individual in the petitioner's position, looking to all these statutes, at best, would have a very difficult time ascertaining the current status of his registration obligation. Indeed, each of the statutes creates new designations for the purpose of categorizing sex offenders—"child sexual offender" in 1995, "sexually violent offender" in 1999, and the tier system in 2010. Each of the statutes also adopts a distinct stance on retroactivity which, as we have seen, is often unclear without one having to look to uncodified bill language for clarification. In the case of the 1999 revisions, looking to that uncodified language only creates greater ambiguity for the reader. It is simply unfair for this Court to hold the petitioner responsible for deciphering the complicated and often inscrutable history of Maryland's sex offender registration laws.

In such instances, where "the standard tools of statutory interpretation fail to discern the intent of the Legislature," *Gardner*, 420 Md. at 17, 20 A.3d at 811, we must rely on other relevant guiding principles; namely, the rule of lenity, and the presumption against retroactive application. These principles, taken together, require this Court to presume, in the absence of clear language indicating otherwise, that the Legislature did not intend for Md.Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, § 792 to apply retroactively, outside of the expressly enumerated exception in (d)(5)(ii)(3).

Even assuming, *arguendo*, that the majority's reading is correct, and that the 1999 revisions to § 792 establish that the Legislature intended them to have retroactive application so that individuals, such as the petitioner, who were convicted of certain sexual offenses prior to its effective date, would be

subjected to life-term registration, such a reading would violate the prohibition against *ex post facto* laws set forth in Article 17 of the Maryland Declaration of Rights. Article 17 provides:

"That retrospective laws punishing acts committed before the existence of such Laws, and by them only declared criminal, are oppressive, unjust and incompatible with liberty; wherefore, no *ex post facto* Law ought to be made; nor any retrospective oath or restriction be imposed or required."

We have recognized that Article 17 is intended " 'to assure that legislative acts give fair warning of their effect and permit individuals to rely on their meaning until *explicitly* changed.' " *Booth v. State*, 327 Md. 142, 174, 608 A.2d 162, 177 (1992) (quoting *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981)). Accordingly, its prohibition, though limited to criminal statutes, *Spielman v. State*, 298 Md. 602, 609, 471 A.2d 730, 734 (1984), "extends broadly to 'any law passed after the commission of an offense which ... in relation to that offense, or its consequences, alters the situation of a party to his disadvantage.' " *Anderson v. Department of Health and Mental Hygiene*, 310 Md. 217, 224, 528 A.2d 904, 908 (1987) (quoting *Kring v. Missouri*, 107 U.S. 221, 235, 2 S.Ct. 443, 455, 27 L.Ed. 506, 511 (1883)) (citation omitted) (internal quotation marks omitted). As the majority reads it, the 2000 version of Article 27, § 792 altered the consequences of the petitioner's crime. This alteration, requiring him to register for life, rather than for the ten years previously statutorily prescribed, was clearly to his disadvantage. It is just this sort of retroactive change that is prohibited by Article 17. *Anderson, supra.* Furthermore, the 1999 revisions to § 792 failed to provide the petitioner with fair warning regarding his registration status. Not only would he be unable to determine, by looking to the statutory language, that the term of his registration obligation had changed, but additional investigation, possibly leading him to the uncodified bill language of Chapter 317, would only further confuse the issue since, this language, as we have seen, clearly contradicts

the statutory language on the matter of retroactive application. For these reasons, the majority's interpretation of § 792, even if accurate, is nonetheless constitutionally impermissible.

The petitioner was not subject to life term registration under revised § 792. His ten-year obligation properly ended in 2008, well before the enactment of CL Title 11, Subtitle 7 in October, 2010. As such, not being subject to registration on September 30, 2010, the petitioner did not meet any of the requirements for retroactivity set forth in CL § 11–702.1, and is not required to register for life pursuant to § 11–707(a)(4)(iii). In reaching an opposite conclusion, the majority employs an attenuated interpretation of the provision before us, impermissibly "add[ing terms] to, [and] remov[ing terms] from, an unambiguous statute in order to give it a meaning not reflected by the words the Legislature chose to use...." *Smack,* 378 Md. at 305, 835 A.2d at 1179. In keeping with the presumption against retroactive application of a statute, the rule of lenity, and the prohibition against *ex post facto* laws, the majority should have concluded that the petitioner had properly satisfied his ten-year registration obligation in 2008, and was not retroactively subject to an increased life term registration requirement.

I dissent.

Judge GREENE has authorized me to state that he joins in this dissenting opinion.