REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 258

September Term, 2012

THOMAS H. QUISPE DEL PINO

v.

MARYLAND DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL
SERVICES ET AL.

Woodward,
Graeff,
Hackner, Paul A.
    (Specially Assigned),

JJ.

Opinion by Woodward, J.

Filed: April 1, 2015

*Friedman, J., did not participate in the Court's
decision to designate this opinion for
publication pursuant to Maryland Rule 8-605.1.

In this opinion, we set sail into waters left uncharted by the voyage that the Court of Appeals undertook in the case of *Doe v. Department of Public Safety & Correctional Services*, 430 Md. 535 (2013) ("*Doe I*"). In *Doe I*, the Court held that requiring Doe to register as a sex offender[1] as a result of the 2009 and 2010 amendments to the Maryland sex offender registration act ("MSORA") violated the prohibition against *ex post facto* laws contained in Article 17 of the Maryland Declaration of Rights.[2] *Id*. at 537 (interpreting Md. Code (2001, 2008 Repl. Vol., 2010 Cum. Supp.), §§ 11-701 *et seq*. of the Criminal Procedure Article ("CP 2010")). There, MSORA did not exist in 1983-84 when Doe committed the sexual offense at issue, nor was Doe required to register when he was convicted in 2006. *Doe I*, 430 Md. at 537-38. Here, at the time of his conviction in 2001 for a sex crime committed in 2000, appellant, Thomas H. Quispe del Pino, was required to register as a sex offender for a period of ten years. The 2010 amendment to MSORA, however, classified appellant as a "Tier II" offender and increased the period of registration from ten years to twenty-five years. The issue thus presented to this Court by the instant case is whether, under *Doe I*, the retroactive application of MSORA to appellant by the 2010 amendment, which

---

[1] For the sake of conciseness, we may use the term "register" as shorthand for "register as a sex offender" in this opinion.

[2] Article 17 of the Maryland Declaration of Rights provides:

> That retrospective Laws, punishing acts committed before the existence of such Laws, and by them only declared criminal, are oppressive, unjust and incompatible with liberty; wherefore, no *ex post facto* Law ought to be made; nor any retrospective oath or restriction be imposed, or required.

results in the increase of his registration period from ten years to twenty-five years, violates

the prohibition against *ex post facto* laws contained in Article 17 of the Declaration of Rights.

We shall hold that it does.

## BACKGROUND

On January 3, 2001, appellant pled guilty to one count of unlawful communication

with a minor, one count of corruption of minors, and one count of loitering and prowling at

nighttime, in the Court of Common Pleas in Pennsylvania ("the Pennsylvania Court"). These

offenses were committed in 2000. On April 10, 2001, the Pennsylvania Court sentenced

appellant to ten years of probation, with his earliest termination date being April 9, 2011.[3]

Because appellant was a Maryland resident, his probation was transferred from Pennsylvania

to Maryland. As a condition of his probation, appellant was required to register as a sex

offender in Maryland for the duration of the ten-year period, under the supervising authority

of the Montgomery County Police Department.

On September 25, 2010, appellant was notified that, due to the 2010 amendment to

MSORA, appellant's registration requirements had been modified as follows:

> As a result of your SEXUAL SOLICITATION OF A MINOR
> conviction and the Maryland law change your new registration
> category is Tier II and your registration term is 25 YEARS. . . .

In other words, following the 2010 amendment, appellant was reclassified as a "Tier II sex

---

[3] Appellant received five years' probation for the offense of unlawful communication
with a minor, five years' probation for the corruption of minors charge, and a fine for the
crime of loitering and prowling at nighttime.

2

offender," and his registration term, which had been ten years, increased to twenty-five years.

On December 21, 2011, appellant filed a Petition for Writ of Prohibition in the Circuit Court for Montgomery County against appellees, Maryland Department of Public Safety and Correctional Services and Gary Maynard, Secretary of the Department (collectively, the "Department"). Appellant argued that requiring his continued registration would violate the prohibition against *ex post facto* laws under both the United States Constitution and the Maryland Declaration of Rights. The Department responded on February 15, 2012, by filing a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. On March 29, 2012, the circuit court held a hearing on appellant's petition and the Department's motion. At the close of the hearing, the court issued an oral ruling and signed two written orders, one denying appellant's petition and the other granting summary judgment in favor of the Department.

Appellant timely filed this appeal. Additional facts will be set forth below as necessary to resolve the issue presented.

## STANDARD OF REVIEW

In the instant appeal, the dispositive issue is whether retroactive application of the 2010 MSORA amendment to appellant violates the prohibition on *ex post facto* laws by extending appellant's term of registration from ten to twenty-five years. "When the trial court's [decision] involves an interpretation and application of Maryland statutory and case law, [the appellate court] must determine whether the lower court's conclusions are legally

3

correct." *Hillsmere Shores Improvement Ass'n, Inc. v. Singleton*, 182 Md. App. 667, 690 (2008) (alterations in original) (citations and internal quotation marks omitted), *cert. denied*, 407 Md. 276 (2009). Interpretations of the Maryland Declaration of Rights are also reviewed *de novo*. *See Davis v. Slater*, 383 Md. 599, 604 (2004).

## DISCUSSION

### I.

### The Maryland Sex Offender Registration Law

In 2010, the General Assembly made two changes to MSORA of particular relevance to the case *sub judice*. First, retroactive registration was required for all persons who were required to register on September 30, 2010, the day before the amendment went into effect. *See* CP 2010 § 11-702.1(a). Second, all sex offenders were placed into a tiered registration system: Tier I offenders were required to register for fifteen years, Tier II offenders were required to register for twenty-five years, and Tier III offenders were required to register for life. CP 2010 §§ 11-701(o)-(q), -707(a)(4).

Appellant contends that, based on *Doe I*, MSORA has become punitive after the 2009 and 2010 amendments, such that "retroactive application [to appellant] would violate not only the United States' Constitution's prohibition against *ex post facto* laws, but also Maryland's Declaration of Rights' prohibition against *ex post facto* laws." Specifically, appellant argues that the retroactive application of the statute disadvantages him, in violation of Article 17 of the Maryland Declaration of Rights ("Article 17"), by increasing the term

4

of his registration from ten years to twenty-five years.

The Department responds that applying MSORA's new requirements to appellant does not violate the state and federal *ex post facto* clauses. The Department contends that the purpose of the Maryland statute "is remedial and its effects are non-punitive," because it "does not require a registrant to do anything other than keep law enforcement authorities (and in limited circumstances, school officials) updated on information that serves to keep the public safe."

It is undisputed that, "[t]o prevail in an *ex post facto* claim, [appellant] must first show that the law that [he is] challenging applies retroactively to *conduct that was completed before the enactment of the law in question*." *Dep't of Pub. Safety & Corr. Servs. v. Demby*, 390 Md. 580, 593 n.10 (2006). We thus must address first whether the 2010 amendment applies retroactively to appellant's criminal conduct for which he was originally sentenced in 2001.

*A. Retroactive Application of MSORA*

Appellant contends that Maryland "lacks the authority to require [him] to register" as a sex offender, because at the time appellant pled guilty in Pennsylvania, the "triggering event" that required him to register in Maryland, namely, his unlawful communication with a minor, was not a crime in Maryland. According to appellant, "[i]f not for the requirement of Pennsylvania, Maryland could not have required Appellant to register because Appellant had not been convicted of a qualifying crime under the Maryland Sex Offender Registry Act

5

at the time Appellant pled guilty in Pennsylvania." In other words, appellant argues that, if he "had moved to Pennsylvania" during his ten-year registration period, "his period of registration would be over," because his Pennsylvania probation expired in 2011. Moreover, appellant claims that he is being punished unfairly, because his conduct, though merely a misdemeanor in Pennsylvania, is treated as a felony in Maryland. The Department responds by arguing that Maryland's unlawful solicitation of a minor statute has not "been applied to [appellant] in any manner that would constitute 'punishment' under the federal or State Ex Post Facto clauses."

Preliminarily, we note that, at the time appellant was placed on probation in April 2001, the Pennsylvania charge of unlawful communication with a minor was not a crime in Maryland.[4] Effective October 1, 2004, sexual solicitation of a minor became a crime in Maryland for the first time as Section 3-324 of the Criminal Law Article. *See* Md. Code (2002, 2004 Cum. Supp.), § 3-324 of the Criminal Law (I) Article. Nevertheless, we disagree with appellant's contention that Section 3-324 was retroactively applied. First, as a condition of his Pennsylvania probation, appellant was required to "register with the appropriate law enforcement agency of another state within ten calendar days of moving outside the Commonwealth of Pennsylvania." Thus, as a Maryland resident, appellant was required to register in Maryland and become subject to the requirements of MSORA until

---

[4] The other offense that required appellant to register in Pennsylvania was corruption of minors. Neither party makes any argument about that crime, and thus we will not address it.

6

April 9, 2011. Second, independent of the conditions of his Pennsylvania probation, appellant was required to register in Maryland, because he had been convicted in another state of "a crime that involves conduct that by its nature is a sexual offense against an individual under the age of 18 years." Md. Code (1957, 1996 Repl. Vol., 2000 Cum. Supp.), Article 27, § 792(a)(6)(viii), (x). Because appellant's conviction for unlawful communication with a minor in Pennsylvania specifically involved a sexual offense with a minor, *see* 18 Pa. Cons. Stat. § 6318(a)(1) (2000), appellant was required to register in Maryland for ten years. *See* Article 27, § 792(d)(5).

As a result of the 2010 amendment to MSORA, CP § 11-702.1 states that "this subtitle shall be applied retroactively to include a person who [] was subject to registration under this subtitle on September 30, 2010." CP 2010 § 11-702.1(a)(2); *see also Doe I*, 430 Md. at 546. Because appellant was subject to registration in Maryland from 2001 until April 9, 2011, it follows that he "was subject to registration . . . on September 30, 2010." Therefore, there is no question that appellant is subject to the retroactive application of the 2010 amendment to MSORA.

Having concluded that the 2010 MSORA amendment is being retroactively applied to appellant, we now must decide whether doing so violates the prohibition against *ex post facto* laws under Article 17 of the Maryland Declaration of Rights. To complete that analysis, we must consider the Court of Appeals's decisions in *Doe I* and *Department of Public Safety & Correctional Services v. Doe*, 439 Md. 201 (2014) ("*Doe II*").

In *Young v. State*, the Court of Appeals rejected a due process challenge to the sex offender registry statute as it existed in 2000, and held that the statute was a civil remedy designed to protect the public from sex offenders. 370 Md. 686, 712 (2002). Based on the Court of Appeals's decision in *Young*, the circuit court in the instant matter denied appellant's writ of prohibition and granted summary judgment in favor of the Department, stating:

> Under [the] Supreme Court's decision, as I read it, in *Smith* [*v. Doe*], 538 U.S. 84 [(2003)], from which the Supreme Court has not departed, there is no ex post facto violation here under the Federal Constitution. And . . . **unless the Court of Appeals changes its jurisprudence**, as Judge Raker articulated in *Young*, 370 Md. 686, **there is no ex post facto violation under the Maryland State Constitution [or] the Declaration of Rights**.

(Emphasis added).

After the circuit court's ruling, the Court of Appeals considered an *ex post facto* challenge to the 2009 and 2010 amendments to MSORA in *Doe I*. 430 Md. at 537.

The pertinent facts in *Doe I* are as follows:

> In 2006, Doe pled guilty to and was convicted in the Circuit Court for Washington County of a single count of child sexual abuse arising out of an incident involving inappropriate contact with a thirteen-year-old student that occurred during the 1983–84 school year when Doe was a junior high school teacher. Doe was sentenced to ten years incarceration, with all but four and one half years suspended, and three years supervised probation upon his release. Although Doe's plea agreement did not address registration as a sex offender as one of the conditions of probation, Doe was ordered at sentencing to "register as a child sex offender." He was also ordered to pay a $500

8

fine. Following his sentencing, Doe filed a Motion to Correct an Illegal Sentence challenging both the fine and the requirement that he register as a child sex offender. The Circuit Court agreed with Doe and issued an order striking the fine and the registration requirement. Doe was released from prison in December 2008. On October 1, 2009, Doe's probation officer directed him to register as a child sex offender. Doe maintained that he did not agree with the requirement, but, against the advice of counsel, he registered as a child sex offender in early October 2009.

*Doe II*, 439 Md. at 208.

The requirement that Doe register as a sex offender was a result of the 2009 amendment to MSORA retroactively requiring offenders who were convicted on or after October 1, 1995, but committed a sexual offense before that date, to register for the first time. *Doe I*, 430 Md. at 540. In October 2009, Doe brought a declaratory judgment suit in the circuit court, seeking an order that he was not required to register as a sex offender. *Id.* at 541. Doe argued that a registration requirement would make his plea invalid as involuntary, because he was not informed that he would have to register as a sex offender when he entered into the plea agreement in 2006. *Id.* The State argued that the requirement did not violate the prohibition against *ex post facto* laws. *Id*. at 541-42. The trial court agreed with the State and ordered that Doe "shall not be removed from the sex offender registry." *Id.* at 542 (footnote omitted).

After this Court affirmed the circuit court, the Court of Appeals granted *certiorari* and reversed our decision. *Id.* at 542, 569. In a plurality opinion, the Court of Appeals held that "requiring [Doe] to register as a result of the 2009 and 2010 amendments violates the

prohibition against *ex post facto* laws contained in Article 17 of the Maryland Declaration of Rights." *Id*. at 537; *see also Doe II*, 439 Md. at 206. The three-judge plurality explained that "in many contexts," the Maryland Declaration of Rights offers broader protections than the United States Constitution. *Doe I*, 430 Md. at 547-49. The plurality further determined that *ex post facto* claims under Article 17 should be analyzed by using the "disadvantage" standard, under which "any law passed after the commission of an offense which . . . in relation to that offense, *or its consequences*, alters the situation of a party to his [or her] disadvantage" violates Article 17. *Id*. at 551-52, 559 (emphasis and alterations in original) (citations omitted).

Specifically, under the disadvantage standard, "Article 17 prohibits the retroactive application of laws that have the effect on an offender that is the equivalent of imposing a new criminal sanction or punishment." *Id*. at 561. The plurality determined that requiring Doe to register had "essentially the same effect" as placing him on probation, that "probation is a form of a criminal sanction," and that "applying the statute to [Doe] effectively imposes on him an additional criminal sanction" for a crime committed in the 1980s. *Id*. at 561-62. The plurality also concluded that the dissemination of Doe's information pursuant to MSORA was "tantamount to the historical punishment of shaming," and thus imposed an additional sanction for Doe's crime. *Id*. at 564, 568. Therefore, according to the plurality, the retroactive application of MSORA to Doe, which had the effect of imposing the additional sanction of probation and shaming, violated the *ex post facto* prohibition contained

10

in Article 17 of the Maryland Declaration of Rights. *Id*. at 568.

Judge McDonald (joined by Judge Adkins) concurred with the plurality's conclusion that the statute violated Article 17, but, in contrast to the plurality, read Article 17 *in pari materia* with Article I, § 10 of the United States Constitution. *See id.* at 577-78 (McDonald, J., concurring). Judge McDonald's concurrence stated further that "the cumulative effect of [the] 2009 and 2010 amendments of the State's sex offender registration law took that law across the line from civil regulation to an element of the punishment of offenders." *Id.* at 578. Although his concurrence did not expressly state the test that was used, both the language of the concurrence and the two law review articles cited therein lead us to conclude that Judge McDonald analyzed the issue under the "intent-effects test." *See id.* (citing Catherine L. Carpenter & Amy E. Beverlin, The Evolution of Unconstitutionality in Sex Offender Registration Laws, 63 Hastings L.J. 1071, 1107-22 (2012); Corey Rayburn Yung, One of These Laws is Not Like the Others: Why the Federal Sex Offender Registration and Notification Act Raises New Constitutional Questions, 46 Harv. J. Legis. 369, 386-400 (2009)).

The United States Supreme Court explained the "intent-effects" test in *Smith v. Doe*:

> We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Ibid*. (quoting *United States v.*

11

*Ward*, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).

538 U.S. 84, 92 (2003). Stated another way, the "intent-effects" test requires a reviewing court to engage in a two-part inquiry: "first, the court must consider the legislative intent of the statute; second, even if the statute's stated purpose is non-punitive, the court must assess whether its effect overrides the legislative purpose to render the statute punitive." *Doe*, 430 Md. at 570 (Harrell, J., concurring) (footnote and citation omitted). Therefore, by declaring that the 2009 and 2010 amendments "took that law across the line from civil regulation to an element of the punishment of offenders," Judge McDonald's concurring opinion found a violation of the State and federal *ex post facto* clauses under the "intent-effects" test. *Id.* at 578 (McDonald, J., concurring).

Judge Harrell, writing separately, concurred in the judgment that Doe was entitled to relief, because his 2006 plea agreement "d[id] not indicate that sex offender registration was a term" of the agreement. *Id.* at 576 (Harrell, J., concurring). Judge Harrell, however, would have denied Doe's ex post facto claims under the "intent-effects" test established in *Smith v. Doe*, 538 U.S. at 84. *See Doe I*, 430 Md. at 569-73. Lastly, Judge Barbera (now Chief Judge) dissented and, using the "intent-effects" test, would have upheld the 2009 and 2010 amendments to MSORA under both the State and federal constitutions. *See id.* at 578-79 (Barbera, J., dissenting).

Although the Court ultimately held that "the retroactive application to Doe of Maryland's sex offender registration statute violated Article 17 of the Maryland Declaration

12

of Rights," *Doe II*, 439 Md. at 210, the divided Court did not reach a holding on whether to apply the "disadvantage" standard or the "intent-effects" test to future *ex post facto* challenges to MSORA.

## *C.* Doe II

In *Doe II*, the Court of Appeals revisited *Doe I* for the purpose of addressing a subject that it had expressly left open in the plurality opinion of *Doe I*. *Doe II*, 439 Md. at 206-07. The subject was a sex offender's obligations under the federal Sex Offender Registration and Notification Act ("SORNA"), and the issue raised in that context was "whether a circuit court has the authority to direct the State to remove sex offender registration information in light of the provisions of SORNA specifically directing sex offenders to register in the state in which they reside, work, or attend school." *Id*. at 207. The Court held that, "notwithstanding the registration obligations placed directly on individuals by SORNA, circuit courts have the authority to direct the State to remove sex offender registration information from Maryland's sex offender registry when the inclusion of such information is unconstitutional as articulated in *Doe I*." *Id*.

*Doe II* involved three individuals whose sex crime convictions pre-dated the 2009 and 2010 amendments to MSORA. First was Doe from *Doe I*. *Id*. at 208-11. Second was John Roe. Roe was convicted of a third degree sexual offense in 1997, "arising out of a series of sexual encounters" occurring from December 1994 to January 1996. *Id*. at 211. When the "course of conduct began," Roe was thirty-four years old and the victim was fourteen years

13

old.  *Id*.  According to the Court, MSORA was in effect at the time of Roe's offenses and conviction.  *Id*. at 212.  Although the State conceded in the appeal to this Court that the registration law did not apply to Roe, Roe was required to register and was on the sex offender registry when the 2009 and 2010 amendments became effective.[5]  *Id*. at 212-13.

Roe brought an action in the Circuit Court for Wicomico County, seeking a declaration that he was not required to register under MSORA, and an order directing the State to remove his name from the sex offender registry.[6]  *Id*. at 212.  The circuit court disagreed, concluding that Roe was required to register for twenty-five years as a Tier II sex offender, but credited him for the time he was previously listed on the registry.  *Id*. at 212-13.  On appeal, this Court, in an unreported opinion, vacated the judgment of the circuit court and remanded the case for further proceedings.  *Id*. at 213.  We held that, pursuant to *Doe I*, the 2009 and 2010 amendments to MSORA could not be applied retroactively to Roe.  *Id*.

Finally, the Court of Appeals permitted a third individual to participate in the appeal as an amicus.  *Id*. at 207-08.  Amicus John Doe ("Amicus") was convicted of fifth degree criminal sexual conduct in Minnesota in July 2010, "arising out of an incident with a schoolmate that occurred in February 2009 while Amicus was enrolled in college in

_____

[5] Roe registered annually for ten years.  *Doe II*, 439 Md. at 211-12.  At the conclusion of the ten year period, Roe was instructed, apparently erroneously, that he had to continue on the sex offender registry for the rest of his life.  *Id*. at 212.  As a result, Roe was on the registry at the time that the 2009 and 2010 amendments to MSORA became effective.  *Id*.

[6] Roe also argued that he was improperly placed on the sex offender registry at the time of his conviction, because under the registration law at that time, he was not required to register as a sex offender.  *Doe II*, 439 Md. at 212.

14

Minnesota." *Id*. at 214. Amicus was required to, and did in fact, register as a sex offender in Minnesota, but was removed in July 2011, because he no longer resided in Minnesota. *Id*. at 214-15. Amicus completed his probation on July 21, 2012. *Id*. at 214.

When Amicus resumed residency in Maryland, he inquired about registration as a sex offender in September 2010, and was told that, as a result of the 2010 amendment to MSORA, he would be classified as a Tier I offender and required to register in Maryland for fifteen years. *Id*. at 215. Amicus filed suit in the Circuit Court for Baltimore City, seeking to be excluded from the sex offender registration requirements of the 2010 amendment. *Id*. The circuit court ruled in favor of the State, and Amicus appealed to this Court. *Id*. We stayed the appeal, pending the Court of Appeals's decision in *Doe I*. *Id*.

The issue in *Doe II* arose on remand of the Doe and Roe cases when the State objected to the orders of the circuit courts that required the State to remove sex offender registration information for Doe and Roe from "all federal databases." *Id*. at 210, 213. As previously stated, the Court of Appeals held in *Doe II* that the circuit courts had the authority to order the removal of all information about a registered sex offender from the Maryland sex offender registry and from any additional database where the State published such information, as well as to order notification of "all relevant federal agencies of the removal," where the inclusion of such information was unconstitutional under *Doe I*. *Id*. at 207, 238.

*D. Applying* Doe I *and* Doe II *to the Instant Case*

At the outset, the Department asks us to apply the "intent-effects" test of *Smith v. Doe*,

15

538 U.S. 84, in determining whether the retroactive application of the 2010 amendment to appellant violates the prohibition against *ex post facto* laws contained in Article 17 of the Declaration of Rights. The Department points to the landmark decision of the Supreme Court in *Marks v. United States*, wherein the Court held that, when no single rationale expressed by members of the Court commands the majority, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment[] on the narrowest grounds." 430 U.S. 188, 193 (1977) (citation and internal quotation marks omitted). According to the Department, because the "disadvantage" standard used by the plurality in applying Article 17 "did not command a majority of the Court, the holding of *Doe* [*I*] must be viewed as the narrower position taken by Judges McDonald and Adkins." As discussed previously, Judge McDonald's concurring opinion employed the "intent-effects" test and determined that, as applied to Doe, the 2009 and 2010 amendments to MSORA did constitute punishment in violation of the U.S. Constitution and the Maryland Declaration of Rights. *Doe I*, 430 Md. at 578 (McDonald, J., concurring).

In the case *sub judice*, we need not decide which test constitutes the "narrowest grounds" of *Doe I*, because under either the "disadvantage" standard or the "intent-effects" test, the same result is reached. In our view, the facts critical to the holding in *Doe I* are substantially the same as those in the instant case. We shall explain.

In *Doe I*, the plurality held that the retroactive application of MSORA to Doe "change[d] the consequences of [Doe's] crime to his disadvantage" by "placing him on

16

probation and imposing the punishment of shaming for life," and thus violated the *ex post facto* prohibition contained in Article 17 of the Declaration of Rights. *Id*. at 559, 568. Judge McDonald's concurring opinion reached the same result by concluding that the retroactive application of MSORA by the 2009 and 2010 amendments "took that law across the line" from civil regulation to punishment. *Id*. at 578 (McDonald, J., concurring). Central to each holding were the following facts: (1) in 1983-1984, when Doe committed the sexual offense for which he was later convicted, Doe was not subject to MSORA—indeed, MSORA did not exist at that time; and (2) because of his conviction, the retroactive provision of MSORA placed Doe on the sex offender registry for life, which required his compliance with all of the requirements of a Tier III sex offender and provided for public dissemination of information about him as a registered sex offender. *Id*. at 553, 559. In other words, but for the retroactive application of MSORA under the 2009 and 2010 amendments thereto, Doe would not be subject to registration as a Tier III sex offender for the rest of his life.

Similarly, in the instant case, (1) in 2000, when appellant committed the sexual offense for which he was later convicted, appellant was not subject to MSORA *beyond a period of ten years*; and (2) because of his conviction, the retroactive provision of MSORA placed appellant on the sex offender registry *for an additional period of fifteen years*, which required his compliance with all of the requirements of a Tier II sex offender and provided for public dissemination of information about him as a registered sex offender. In other words, but for the retroactive application of MSORA, appellant would not be subject to

17

registration as a Tier II sex offender for the fifteen year period following the initial ten years of registration. In sum, at the end of the first ten years as a registered sex offender, appellant was in the exact same position as Doe—the retroactive application of MSORA placed both Doe and appellant on the sex offender registry when they otherwise would have been free from any obligations under MSORA.

The Department, however, argues that the case *sub judice* is distinguishable from *Doe I*, because (1) Doe's "1983-1984 crime pre-dated Maryland's first sex offender registration law by more than ten years," while MSORA was in effect when appellant committed his crime in 2000; and (2) Doe had never been legally obligated to register as a sex offender prior to the 2009 and 2010 amendments to MSORA, while appellant "was actually *on* the sex offender registry at the time of the passage of the 2009-2010 amendments." In our view, these factual distinctions do not compel a result different from *Doe I*.

As set forth earlier in this opinion, one of the consolidated cases in *Doe II* involved Roe, who had been convicted of a third degree sexual offense in 1997. 439 Md. at 211. The Court of Appeals observed that "[a]t the time of Roe's offenses and conviction, the Maryland sex offender registration statute in effect was the 1995 version," which required registration for a period of ten years. *Id*. at 212. Roe, however, was not subject to registration until the 2009 and 2010 amendments to MSORA went into effect. *Id*. at 212-13. This Court held, in an unreported opinion, that under *Doe I*, the 2009 and 2010 amendments to MSORA could not be retroactively applied to Roe. *Id*. at 213. Therefore, the existence of a sex offender

18

registration statute at the time of the commission of the sex crime at issue did not make *Roe* distinguishable from *Doe I*. The same result should occur here.

A more difficult factual distinction is the presence of appellant on the sex offender registry at the time that the 2010 amendment to MSORA became effective. Not only was Doe not on the sex offender registry when the 2009 and 2010 amendments became effective, but neither were Roe[7] and Amicus in *Doe II*. *See id.* at 208, 212-13, 215. The issue raised in the instant case does not involve an increase in the requirements, restrictions, or public dissemination of personal information of a registrant occasioned by the retroactive application of the 2010 amendment.[8] Rather, the retroactive application of the 2010 amendment automatically subjects appellant to registration under MSORA for a period of time, fifteen years, during which time he otherwise would not have been subject to *any* of the statute's requirements, restrictions, or public dissemination of private information. It is, in essence, an all or nothing proposition.

The retroactive imposition of MSORA when it would not otherwise be required for

---

[7] Roe was in fact on the sex offender registry, but the State conceded that Roe should not have been on the registry, because the registration law in effect at the time of his offenses and conviction did not apply to him. *Doe II*, 439 Md. at 213.

[8] The 2010 amendment to MSORA imposed many new requirements, restrictions, and public dissemination of personal information. *See Doe I*, 430 Md. at 569-70 (Harrell, J., concurring). We are not called upon in the instant case to decide, nor do we express any opinion on, whether the changes brought about by the 2010 amendment violate the prohibition against *ex post facto* laws under Article 17 when applied to an individual who is placed on the sex offender registry prior to the 2010 amendment, but whose registration period is not extended by the 2010 amendment.

a convicted sex offender was found to be punishment by both the plurality opinion and Judge McDonald's concurring opinion in *Doe I*. *See* 430 Md. at 568, 578 (plurality opinion and McDonald, J., concurring). As we have stated, such punishment is the same when applied to appellant (after the ten-year registration period) as when applied to Doe. In other words, the presence of appellant on the sex offender registry as of the effective date of the 2010 amendment does not change the nature or the severity of the consequences of the retroactive application of MSORA. Therefore, we conclude that the presence of appellant on the Maryland sex offender registry at the time of the effective date of the 2010 amendment to MSORA does not remove the instant case from the ambit of *Doe I*.

Finally, our conclusion is not altered by the opinion of the Court of Appeals in *Ochoa v. Department of Public Safety and Correctional Services*, which was decided just months before *Doe I*. 430 Md. 315 (2013). In that case, Ochoa was convicted of child sexual abuse and third degree sexual offense in 1998, for offenses that were committed in 1997. *Id.* at 317. Ochoa was required to register for a period of ten years under the version of MSORA in effect at that time. *Id.* By virtue of a 1999 amendment to MSORA, Ochoa's registration period increased from ten years to lifetime. *Id.* at 321. On April 6, 2010, Ochoa instituted a declaratory judgment action, seeking a declaration that he had not committed a crime that required lifetime registration under the 2010 amendment to MSORA. *Id.* at 317.

Ochoa's issue on appeal was one based solely on statutory interpretation, namely, that his 1998 convictions did not make him subject to registration under the version of MSORA

in effect on September 30, 2010. *Id.* at 321-22. The Court held that Ochoa's 1998 convictions made him subject to registration on September 30, 2010, and thus under the retroactive application of the 2010 amendment, he was a Tier III sex offender and required to register for life. *Id.* at 327-28.

Ochoa, however, raised no constitutional arguments, much less one based on Article 17's prohibition against *ex post facto* laws. The Court concluded with the following comments:

> Ochoa also insists that the sex-offender registration statute is penal and must be "strictly construed against the State." Although Ochoa quotes at length one case in support of this proposition, he makes no effort in his brief to apply it to his own case or develop it in any meaningful way. For example, he does not argue that the alleged penal nature of the statute bars retroactive application of the 1999 law imposing a lifetime registration under the principles of due process. *See* Maryland Rule 8-504(a)(5) (requiring "[a]rgument in support of a party's position"). We have held that "arguments not presented in a brief or not presented with particularity will not be considered on appeal." *Klauenberg v. State*, 355 Md. 528, 552, 735 A.2d 1061, 1074 (1999) (citation omitted) (declining to address an appellant's argument that was merely "lumped in" with another). Considering these principles, we need not address this issue.

*Id*. at 328 (footnote omitted). Because the Court of Appeals did not address the constitutionality of MSORA's retroactive application to Ochoa under Article 17, we conclude that *Ochoa* is inapplicable to the case before us.

In sum, we conclude that the retroactive application of MSORA to appellant by the 2010 amendment imposed additional punishment on appellant for criminal conduct that occurred prior to the existence of the amended statute, by extending the term of his required

21

registration from ten years to twenty-five years. Thus the 2010 amendment, as applied to appellant, is unconstitutional under the prohibition against *ex post facto* laws contained in Article 17 of the Maryland Declaration of Rights. Accordingly, we hold that the trial court erred by denying appellant a writ of prohibition, and also erred by granting summary judgment in favor of the Department.

## II.

### The Sex Offender Registration and Notification Act ("SORNA")

The Department argues, in the alternative, that SORNA, 42 U.S.C. § 16911 *et seq.*, "imposes on [appellant] an obligation to register as a sex offender that is independent of [his] obligation to register under Maryland law." Therefore, the Department concludes, "even if the Maryland Act imposed no [ ] requirements [to register], [appellant] would still be required under SORNA to register in Maryland as a tier II offender and to keep his registration current; if he failed to do so, he would be criminally liable under federal law."

Appellant responds that this issue is waived for our review, because the issue of whether federal law required him to register was not raised in or decided by the circuit court. Alternatively, appellant asserts that, "[e]ven if this issue were before this Court, federal law does not impose an obligation on Appellant to register as a sex offender," because, pursuant to 42 U.S.C. § 16911(2), (3), & (4), appellant would only be categorized federally as a Tier I sex offender. Although Tier I sex offenders must initially register for fifteen years, as appellant concedes, he argues that, under 42 U.S.C. §16915(b)(1), in light of his clean record,

22

his period of registration ended on January 3, 2011. Therefore, even if this Court were to reach the merits, appellant argues, he would not be required to register under SORNA.

The Court of Appeals directly addressed the issue of SORNA registration in *Doe II*, holding, as we have said, that SORNA does not change the consequences of a registration requirement held unconstitutional under Maryland law. 439 Md. at 207. The Court reasoned:

> Where Appellees would only be required to register in Maryland, and where we have held that the retroactive application of the Maryland registry is unconstitutional, they, and individuals similarly situated in Maryland, cannot be required to register in Maryland. The language of SORNA expressly providing for a conflict between the federal law and state constitutions, as well as the available federal guidance on the topic, leads us to the conclusion that so long as Appellees are in Maryland, they cannot be required to register as sex offenders in Maryland, notwithstanding the registration requirements imposed directly on individuals by SORNA.

*Id*. at 235. Therefore, because we have held that appellant cannot be required to register as a sex offender in Maryland beyond the ten years imposed by the Pennsylvania Court, he cannot be required to register pursuant to SORNA.

**ORDERS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY DATED MARCH 29, 2012 REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO ENTER AN ORDER IN FAVOR OF APPELLANT CONSISTENT WITH THIS OPINION; APPELLEES TO PAY COSTS.**