REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1561

September Term, 2012

DONALD CONNOR, JR.

v.

STATE of MARYLAND

Krauser, C.J.
Woodward,
Sharer, J. Frederick
  (Retired, Specially Assigned),

JJ.

Opinion by Sharer, J.

Filed: May 27, 2015

* Michael W. Reed did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8-605.1

Following his conviction in 1997 for sexual child abuse, Donald Connor, Jr., was required to register as a sex offender, pursuant to Maryland's sex offender registration statute ("MSORA").

Having failed on several occasions to comply with registration requirements, he was charged and convicted in 2001, in 2004, and in 2007. After the State again charged Connor with failing to register in 2010, he moved to dismiss, asserting that his ten-year registration requirement had expired, and that further prosecutions were barred by *ex post facto* considerations. The State did not respond to Connor's motion.

On September 10, 2012, at a hearing in the Circuit Court for Baltimore City (Reed, J.), Connor's motion was denied. Then, on an agreed statement of facts, he was convicted of failing to register, pursuant to Md. Code Ann. (2001) Criminal Procedure ("C.P.") § 11-721(a).

In his appeal, Connor presents the following question, which we have recast:

> Was his conviction for failing to comply with sex offender registration requirements in violation of federal and State *ex post facto* laws prohibitions?

## FACTUAL BACKGROUND and PROCEEDINGS BELOW

The facts underlying Connor's sexual abuse conviction and subsequent convictions for failure to register are not in dispute.

On July 23, 1997, after Connor's guilty plea to one count of child sexual abuse, the Circuit Court for Baltimore City (Cannon, J.) imposed a sentence of two years' incarceration. At that time, Art. 27, § 792 required Connor, *inter alia,* to register as a sex

offender upon his release from incarceration, to re-register on a regular basis for a period of ten years, and to provide prompt notification of changes in his address. *See* Md. Code Ann. Art. 27, § 792 (1957, 1996 Repl. Vol., 1997 Supp.).[1] Connor was released from commitment on April 25, 1999.

On March 23, 2001, in the Circuit Court for Baltimore City (Dancy, J.), Connor entered a guilty plea to a violation of Art. 27, § 792 – failing to notify the sex offender registry's local authority of a change in his address. The court sentenced Connor to a three-year term of incarceration, suspending all but two years, eight months and 10 days, and placed Connor on probation for three years.

On September 24, 2004, Connor again entered a guilty plea to a charge of failing to register. The Circuit Court for Baltimore City (Themelis, J.) sentenced him to a nine-month term of incarceration.

On November 21, 2007, following Connor's guilty plea to a charge of failing to register, the Circuit Court for Baltimore City (Glynn, J.), imposed a one-year term of incarceration.

In 2010, Connor re-registered, giving as his address 418 East Lanvale Street, in Baltimore City. When Baltimore City police attempted to verify that information, they found the property to be vacant. Because Connor's actual residence was unknown, a warrant was

---

[1] In 2001, Article 27, § 792 was repealed and reenacted as Title 11, Section 7 of the Criminal Procedure Article. *See,* CP 2001 §§ 11-701, *et seq*.

issued for his arrest. After being located by Baltimore police in April 2012, he was again charged with failure to properly register as a sex offender, in violation of C.P. §§ 11-705 and 11-721.

As we have noted, Connor responded to the latest failure to register charge by filing a motion to dismiss, arguing that the charges against him had "no statutory basis" because they were brought beyond the ten-year period of registration that accompanied his 1997 guilty plea. Although Connor had subsequently been punished for failure to register on three prior occasions, his motion averred that he had not been convicted of any additional sexual offense that would have subjected him anew to Subtitle 7's registration requirements. His motion concluded:

> Under § 11-707(a)(4)(i), Mr. Connor's period of registration is ten years. Section 11-707(b)(1) specifies that this period runs from his date of release, which was 4/25/1999. Therefore, Mr. Connor's term of registration terminated on 4/25/2009, ten years from his date of release.

Although Connor's motion to dismiss made no reference to potential *ex post facto* violations, his counsel advised the trial court that the motion to dismiss "is a really interesting *ex post facto* issue." Counsel made further reference to the issue being before the Court of Appeals at that time.[2] Thus, we conclude that the issue was raised in, and decided by, the trial court, pursuant to Md. Rule 8-131(a).[3]

_____

[2]Presumably, the court was referring to *Doe v. Department of Public Safety & Correctional Services*, 430 Md. 535 (2013) ("*Doe I*").

[3]The State raises no issue of lack of preservation of Connor's challenge below, nor
(continued...)

3

Following the court's denial of Connor's motion to dismiss, he agreed to go forward on a not guilty, agreed statement of facts. The agreed statement of facts, as presented by the prosecutor, provided:

> Mr. Connor was convicted (inaudible) to register. During his initial registration, he was advised of duties and obligations, including his duty to register . . . . On September 2, 2010, he registered at 418 East Lanvale Street. Sergeant Newburger (phonetic sp.) attempted to verify his address on September 22nd, 2010, but found the location vacant. His whereabouts were unknown and a warrant was issued on October 6th, 2010. At that point, . . . his whereabouts were unknown, but they were able to locate him in April of 2012. He had not registered since 2010 and if called to testify, Sergeant Newburger may identify him for the right of counsel. All events occurred in Baltimore, Maryland.

Defense counsel added the following:

> We have no corrections or modifications, Your Honor. I would simply incorporate our Motion to Dismiss at this time, and argue that Mr. Connor, when he was told, initially when he plead guilty to this offense, he only had to register for 10 years, and now it's a lifetime obligation of registering, based upon the law in 1997.

After hearing oral arguments by counsel,[4] the court (Reed, J.) convicted Connor of failure to register as a sex offender, and imposed a sentence of three years, suspending all but 18 months.

---

[3](...continued)
does the State suggest that we not consider the *ex post facto* appellate argument for not having been fully raised and decided below. Even were we satisfied that the *ex post facto* issue was not properly raised below, we would be justified in exercising our independent discretion in order to prevent the need for further collateral proceedings.

[4]The court also noted that a case regarding the sex offender registration law was currently pending in the Court of Appeals, but did not specify which case.

**DISCUSSION**

Placing his reliance on *Doe v. Department of Public Safety & Correctional Services,* 430 Md. 535 (2013), Connor argues that his conviction must be reversed. He asserts that amendments to Maryland's sex offender registration statute in 2009 and 2010, which increased his registration requirement from ten years to lifetime, violate state and federal prohibitions against *ex post facto* laws. *See,* C.P. § 11-707(a)(4)(ii). As a result of Connor's 1997 conviction for sexual child abuse, he is designated as a Tier III offender pursuant to the amended statute, and subject to lifetime registration. C.P. § 11-701(q)(2).

The State assigns several reasons that sustain Connor's conviction. First, as the result of his several intermittent periods of incarceration for past violations of C.P. §§ 11-701, *et seq.*, Connor's initial ten-year registration period had been tolled by about two years, and thus had not yet expired when he committed the 2010 offense for failure to register. The State also suggests that, while Doe had filed a civil complaint seeking a declaratory judgment challenging the applicability of MSORA to his situation, Connor is challenging a criminal conviction.[5] Moreover, and perhaps most significantly, the State argues that when Connor committed his act of child sexual abuse, registration was an established collateral

---

[5]As this Court said in *Sanchez v. State*, 215 Md. App. 42, 49 (2013), responding to an identical assertion by the State: "We see absolutely no reason why the procedural difference in these two cases [*Doe and Sanchez*] forecloses application of *Doe's* holding to the case before us." We concur in that conclusion.

consequence of that offense. Doe, on the other hand, committed his sexual offense before the enactment of registration requirements.

The State concludes, therefore, that because the 2009 and 2010 amendments to MSORA did not substantially work to Connor's disadvantage, his enhanced registration obligation does not run afoul of *ex post facto* restrictions.

### *Doe and Sanchez*

Doe, a teacher, was charged in 2005 with having committed a child sexual offense during the 1983-84 school year. His offense took place prior to the enactment of registration requirements. In 2006, Doe entered a plea of guilty, which did not contain any reference to registration. *Doe,* 430 Md. at 538-39. In its sentence, the court imposed a term of incarceration, a probation period upon release, and a probation requirement that Doe "register as a child sex offender." *Id.* at 539-40.

In 2009 and in 2010, the General Assembly amended the MSORA, expanding the registration requirements for sexual offenders. As a result, in the State's view, Doe became subject to the Act and was required to register. Threatened with arrest, Doe complied. He then sought a declaratory judgment that he was not subject to the registration provisions of MSORA. Doe's request for relief was denied by the Circuit Court for Washington County, whose order was affirmed by this Court in an unreported opinion. On certiorari to the Court of Appeals, Doe argued that his required registration was contrary to *ex post facto* considerations. The Court agreed, and reversed.

6

Writing for the Court, Judge Greene provided a cogent history of the sex offender registration program.

> In 1995, the Maryland General Assembly first enacted the Maryland sex offender registration statute. As enacted, the statute applied prospectively to sex offenders who committed their crimes after the statute went into effect on October 1, 1995.
>
> In 2001, the sex offender registration statute was amended and was applied retrospectively to different groups of sex offenders, including "a child sex offender who committed [his or her] sexual offense on or before October 1, 1995" if that offender was "under the custody or supervision of the supervising authority on October 1, 2001."
>
> In 2009, the retroactive application of the statute was once again amended and registration was required of a child sex offender who committed his or her crime before October 1, 1995 but was convicted on or after October 1, 1995, irrespective of when the offender was incarcerated or under supervision.
>
> In 2010, the sex offender registration statute was amended again, and among other things, the amendment addressed the retroactive application of the statute. The 2010 amendment required retroactive registration of all persons who were already required to register on September 30, 2010, the day before the amendment went into effect. This language had the consequence of incorporating the retroactive application of the statute as amended in 2009.

*Id.* at 545-46 (Citations and footnotes omitted).

Connor, having been convicted in 1997, was clearly subject to the registration requirements of MSORA. He argues, however, that he was subject only to the ten-year registration requirement, which, in his view, expired in April, 2009 – ten years from the date of his release from incarceration. Thus, he concludes, the State's effort to compel registration in 2010 is of no effect.

7

Connor's primary argument is that he should not be subject to lifetime registration, based on *Doe*.[6]   In a three-member plurality decision, the Court held that retroactively applying the sex offender registration requirements to Doe violated Maryland's prohibition against *ex post facto* laws.[7]   430 Md. at 537.

The General Assembly initially enacted a sex offender registration law in 1995, which "applied prospectively to sex offenders who committed their crimes after the statute went into effect on October 1, 1995." *Id.*  at 545 (citing 1995 Md. Laws, Chapter 142, § 3).  In the ensuing years, as MSORA was amended from time to time, "the statutory framework governing sex-offender registration has changed significantly." *Ochoa v. Dept. of Public Safety and Correctional Services,* 430 Md. 315, 317, *reconsideration denied*, 430 Md. 315 (2013).  In 2001, the law was amended to apply retroactively to "different groups of sex offenders, including 'a child sex offender who committed [his or her] sexual offense on or before October 1, 1995,' if the offender was 'under the custody or supervision of the supervising authority on October 1, 2001.'" *Doe,* 430 Md. at 546 (quoting C. P. § 11-702.1 (2001); 2001 Md. Laws, Chap. 221).

When Doe pleaded guilty in 2006 to a single count of child sexual abuse based on his inappropriate contact with a 13-year old student during the 1983-84 school year, the plea

---

[6]*Doe* was decided by the Court less than five weeks after  *Ochoa v. Dept. of Public Safety and Correctional Services,* 430 Md. 315 (2013). The Court denied its motion for reconsideration in *Ochoa* two weeks after its decision in *Doe*.

[7]Three members of the Court concurred in the result; there was one dissent.

8

agreement did not address a requirement that he register as a sex offender. The court imposed a ten-year sentence, suspending all but four-and-one-half years, and three years' probation upon his release from prison. "As one of the conditions of [Doe]'s probation, he was ordered to 'register as a child sex offender.'" *Id.* at 539-40.

Subsequent to Doe's release from prison in 2008, the General Assembly amended MSORA to require registration by "a child sex offender who committed his or her crime before October 1, 1995 but was convicted on or after October 1, 1995, irrespective of when the offender was incarcerated or under supervision." *Id.* at 540, 546 (citing C. P. § 11-702.1 (2009 Cum. Supp.); 2009 Md. Laws, Chap. 541). In 2010, the statute was again amended to require retroactive registration by "all persons who were already required to register on September 30, 2010, the day before the amendment went into effect." *Id.* at 546 (citing C.P. § 11-702.1(a)(2) (2010 Cum. Supp.)). These amendments had the effect of re-classifying Doe as a Tier III sex offender, as is Connor, who was required to register every three months for life. A Tier III designation is the most severe. *Sanchez,* 215 Md. App. at 45.

In his declaratory judgment action, Doe argued that the retroactive application of the amendments, because of their "highly punitive and restrictive nature," violated *ex post facto* prohibitions of both the federal constitution[8] and Article 17 of the Maryland Declaration of

---

[8]"Article I, Section 10 of the Constitution of the United States provides in part that '[n]o State shall . . . pass any . . . ex post facto Law. . . .'" *Khalifa v. State,* 382 Md. 400, 424 (2004).

Rights.[9] *Doe,* 430 Md. at 547. In its plurality opinion, the Court concluded that requiring *Doe* to register under the amended statute violated Article 17. *Id.*

In reaching its conclusion, the Court first determined to interpret the *ex post facto* prohibition pursuant to the "disadvantage analysis" traditionally used by the Court, rejecting the narrower "intent-effects" approach recently taken by the Supreme Court in its analysis of the Alaska sex offender registration statute. *Smith v. Doe,* 538 U.S. 84 (2003); *Doe,* 430 Md. at 551, 557. "In determining whether a law is unconstitutional under the disadvantage analysis, we look to two factors: whether the law applies to events that occurred before its enactment, and whether the application 'disadvantages the offender.'" *Sanchez,* 215 Md. App. at 48, (quoting *Doe,* 430 Md. at 551-52). The Court of Appeals explained:

> The prohibition against *ex post facto* laws is rooted in a basic sense of fairness, namely that a person should have 'fair warning' of the consequences of his or her actions and that a person should be protected against unjust, oppressive, arbitrary, or vindictive legislation.

*Id.,* 430 Md. at 552 (citing *Public Safety v. Demby,* 390 Md. 580, 608-09 (2006)).

In *Doe*, the Court noted:

---

[9]Article 17 of the Maryland Declaration of Rights provides:

> That retrospective Laws, punishing acts committed before the existence of such Laws, and by them only declared criminal, are oppressive, unjust and incompatible with liberty; wherefore, no *ex post facto* Law ought to be made; nor any retrospective oath or restriction be imposed, or required.

*Khalifa,* 382 Md. at 424-25.

In fact, during the 2010 trial court proceedings in the present case, the trial judge, who also presided over [Doe's] original sentencing four years earlier, stated "no one could have anticipated, I certainly didn't in 2006, that in 2009, the law would change to require someone to register if an offense had occurred during the time period that it did occur in this particular case.

*Id.* at 553. The Court held the following:

Based on principles of fundamental fairness and the right to fair warning within the meaning of Article 17, retrospective application of the sex offender registration statute to Petitioner is unconstitutional. As noted above, Petitioner committed his sex offense during the 1983-84 school year. The Maryland sex offender registration statute did not go into effect until over a decade later in 1995. As a result of the 2009 and 2010 amendments to the statute, the registration requirements were applied retroactively to Petitioner. He could have not have had fair warning that he would be required to register**.**

*Id.*

Similarly, we recently held in *Sanchez*, applying *Doe*, that the statutory amendments that retroactively applied the sex offender registration requirements to one convicted of a fourth degree sex offense in 2002, violated *ex post facto* laws because no such requirement existed at the time of Sanchez's offense. 215 Md. App. at 46.

*Doe* and *Sanchez* are factually distinguishable from the case before us. At the time of their offenses, as well as at the time of their convictions, neither Doe nor Sanchez was subject to Maryland's sexual offender registration law. As a result, they "could not have had fair warning" that they would be required to register. *Doe,* 430 Md. at 553. While factually inapposite, *Doe* and *Sanchez* are instructive. Conversely, from the time of his conviction, as well as his actual offense, Connor has always been subject to the MSORA registration requirements.

11

### *Del Pino v. State*

More to the point is this Court's recent opinion in *Del Pino v. State*, ___ Md. App. ___ (2015) (No. 258, Sept. Term, 2012, filed April 1, 2015) in which we held, on similar facts, that an increase in the registration beyond that originally imposed was, indeed, in violation of *ex post facto* prohibitions.

At the time of his 2001 conviction in Pennsylvania, for a crime committed in 2000, Thomas Del Pino was required to register as a sex offender for a period of ten years. A 2010 amendment to the MSORA, however, reclassified him to a "Tier II" offender, for which the registration requirement was 25 years.

Following his Pennsylvania conviction, Del Pino became a Maryland resident. His Pennsylvania probation was transferred to Maryland and, in 2010, he was advised that his registration requirement had been modified from ten to 25 years. In response, he filed a Petition for a Writ of Prohibition in the Circuit Court for Montgomery County. Following a hearing, the court denied Del Pino's petition and granted summary judgment in favor of the Respondent, the Maryland Department of Public Safety and Correctional Services.

Writing for this Court, Judge Woodward included an exhaustive discussion of *Doe v. Dep't. of Public Safety and Correctional Services*, 430 Md. 535 (2013) (*"Doe I"); Doe v. Dep't. Public Safety and Correctional Services*, 439 Md.201 (2014) (*"Doe II"); Young v. State*, 370 Md. 686 (2002); and *Sanchez v. State*, 215 Md. App. 42 (2013), noting:

> Similarly, in the instant case, (1) in 2000, when appellant committed the
> sexual offense for which he was later convicted, appellant was not subject to

MSORA *beyond a period of ten years*; and (2) because of his conviction, the retroactive provision of MSORA placed appellant on the sex offender registry *for an additional period of fifteen years*, which required his compliance with all of the requirements of a Tier II sex offender and provided for public dissemination of information about him as a registered sex offender. In other words, but for the retroactive application of MSORA, appellant would not be subject to registration as a Tier II sex offender for the fifteen year period following the initial ten years of registration. In sum, at the end of the first ten years as a registered sex offender, appellant was in the exact same position as Doe – the retroactive application of MSORA placed both Doe and appellant on the sex offender registry when they otherwise would have been free from any obligations under MSORA.

*Del Pino*, ___ Md. App. at ___, No. 258-12, pp. 17-18 (emphasis in original). Concluding, we held

that the retroactive application of MSORA to appellant by the 2010 amendment imposed additional punishment on appellant for criminal conduct that occurred prior to the existence of the amended statute, by extending the term of his required registration . . . . Thus, the . . . amendment, as applied to appellant, is unconstitutional under the prohibition against *ex post facto* laws. . . .

*Id*. at 21-22.

*Del Pino* compels our holding that Connor cannot be compelled to a registration requirement beyond the original ten-year requirement.

### Connor's 10-year registration requirement has tolled

Notwithstanding our conclusion as to the *ex post facto* question, our inquiry is not complete.

In his motion to dismiss, Connor asserted that he is not subject to the amended versions of MSORA because his original ten-year registration requirement had expired

13

before the effective date of the amendments. Although he appears to have abandoned that challenge in this appeal, in favor of his *ex post facto* arguments, the two are sufficiently intertwined that we will take up his initial contentions.

Following his conviction in 1997, Connor was sentenced to a term of incarceration, to be followed by a period of probation.[10] He was also required to register as a sex offender for ten years, beginning from the date of his last release from incarceration. Connor does not dispute those conditions. The law in effect at the time appellant was released from commitment specifically provided the following:

> (d) *Duration of registration.* – (1) A child sexual offender shall register in person with a local law enforcement agency annually for 10 years after:
> (i) The last date of release;
> (ii) The child sexual offender is granted probation before judgment, probation after judgment, or a suspended sentence; or
> (iii) The child sexual offender receives a sentence that does not include a term of imprisonment.

Art. 27, § 792 (1957, 1996 Repl. Vol., 1998 Supp.). Connor contends that his ten-year requirement was satisfied on the tenth anniversary of his release from confinement on April 25, 2009. Because that anniversary date preceded the effective date of the 2009 and 2010 amendments to MSORA, he posits that his obligation has been satisfied.

The State responds that, even if Connor is not subject to the enhanced registration requirement, his ten-year registration obligation has been tolled by the three intervening

---

[10]The record does not disclose the terms of Connor's plea. Thus, we do not know, for example, whether a condition of the plea was registration for a specific term of ten years and which, therefore, might have precluded the extension of his registration requirement. In view of our *ex post facto*-based conclusion, we need not consider that possibility.

convictions for failing to register, and the nearly two years of incarceration that he served as a result of those convictions. Therefore, the State concludes, he has not been subject to a full ten years of registration obligation. The State further suggests that, "[a]llowing that period to run while Connor was incarcerated for his failure to comply with his registration obligation would not serve the interest of public safety, which has always been the legislative purpose of Maryland's sex offender registration laws."

In support of that position, the State refers us to *Young v. State*, 370 Md. 686, 712 (2002) ("the registration provisions are tailored to protect the public"; registration not additional punishment) and *Lesher v. Trent*, 944 N.E.2d 479, 483 (Ill. App. Ct., 5th Dist. 2011) (statute that provided for tolling of the registration period during interim periods of confinement not violative of petitioner's rights; purpose of registration requirement is public safety).

We must "construe a statute 'so that no word, clause, sentence or phrase is rendered superfluous or nugatory.'" *Whitley v. Md. State Bd. of Elections,* 429 Md. 132, 170 (2012) (quoting *Chow v. State,* 393 Md. 431, 443 (2006)).

> Our cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. We first look to the language of the statute to determine its plain meaning, and we neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute.

*McCloud v. Handgun Permit Rev. Bd.,* 426 Md. 473, 479-80 (2012) (Citations omitted). The statute in effect at the time of Connor's conviction required the ten-year period of registration to commence upon release from all incarceration. Art. 27, § 792 (1999), C.P. § 11-705.

The plain language of the statute, and the legislative design of MSORA, "clearly indicate" that it was "intended as a regulatory requirement aimed at protection of the public." *Young,* 370 Md. at 712. Because the purpose of Maryland's sex offender registration laws has been to protect the interests of public safety, it would be contrary to the plain language of the statute and the legislative intent to conclude that an offender's ten-year registration requirement could be amortized while he was incarcerated for failing to comply with his registration obligations. As well, common sense dictates otherwise.

Similarly, we have held that periods of time during which an appellant was imprisoned for violations of probation "tolled the probationary term to the extent of the duration of the imprisonment." *Catlin v. State,* 81 Md. App. 634, 640, *cert. denied,* 319 Md. 581 (1990).

Connor was initially released from incarceration on April 25, 1999, because he thereafter repeatedly failed to properly register pursuant to MSORA, he was convicted three times – in 2001, 2004, and 2007. The trial court found the cumulative total of his additional periods of incarceration to approximate two years. As a result, at the time of Connor's September 2010 conviction for failure to register, he was still subject to registration requirements pursuant to his original sentence. Thus, we hold that Connor's ten-year

registration requirement has been tolled by the period of time that he spent in confinement after his release from incarceration in 1999.[11]

Therefore, we shall order a limited remand to the Circuit Court for Baltimore City for the purpose of a hearing to determine the precise number of days that Connor suffered incarceration as a result of his breach of his registration obligations following his release from commitment on April 25, 1999. Connor's original ten-year obligation would then be expanded by that result.

**JUDGMENT OF CONVICTION AFFIRMED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS; COSTS ASSESSED TO THE MAYOR AND CITY COUNCIL OF BALTIMORE AND TO APPELLANT IN EQUAL SHARES.**

---

[11]Indeed, his ten-year registration requirement may, by now, have been fulfilled.

17