**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2593

SEPTEMBER TERM, 2014

_____

FRANKLIN DAVID LONG

v.

MARYLAND STATE DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONAL
SERVICES

_____

Graeff,
Kehoe,
Salomon, James P.
  Senior Judge, Specially Assigned

JJ.

_____

Opinion by Salmon, Jr.

_____

Filed:  September 28, 2016

Franklin David Long ("Long") filed a complaint for declaratory relief in the Circuit Court for Montgomery County against the Maryland Department of Public Safety and Correctional Services ("the Department") in which he asked the court to declare:

(1) That the Plaintiff be removed from the Maryland Sex Offender Registry since his original sentence required only a ten (10) year registration term which should have expired in 2011; or, in the alternative,

(2) Should this Court find that the Plaintiff must remain on the Maryland Sex Offender Registry, that the Plaintiff only be required to register once a year with his supervising authority as opposed to every three months; and further

(3) That the terms of his registration be in accordance with his original sentence and the laws in place at the time of his crime, and not pursuant to the retroactive application of the 2001, 2009 and 2010 amendments to the Maryland sex offender statute[.]

The Department filed an answer to the complaint, after which both Long and the Department filed motions for summary judgment. The circuit court, after hearing oral argument, granted the Department's motion for summary judgment and ruled: 1) that Long's original sentence required him to register as a sex offender for life, and 2) that Long was required to meet the registration requirements as a sex offender as they currently exist. The court also denied Long's cross-motion for summary judgment and declared, in writing, the rights of the parties. Long filed a timely appeal to this Court in which he raises two questions that he phrases as follows:

1. Did the [c]ircuit [c]ourt err in determining that [a]ppellant was subject to lifetime registration on the Maryland Sex Offender Registry when he was only required to register for a ten-year term at the time of his sentence?

2. Did the [c]ircuit [c]ourt err in determining that the additional registration requirements imposed upon [a]ppellant by the 2009 and 2010 amendments

to the Maryland Sex Offender Registry Act did not violate the prohibition against *ex post facto* laws under the Maryland Declaration of Rights?

The second question presented is one of first impression. We shall answer that question as well as the first in the negative.

## I.

## BACKGROUND

On October 4, 2000, when Long was 66 years old, he committed a third-degree sexual offense. On the date this crime was committed his victim was an 11-year-old girl.

About ten months after the commission of the aforementioned crime, on August 6, 2001, Long entered a guilty plea in which he admitted having committed a third-degree sexual offense. The plea was entered in the Circuit Court for Montgomery County, Maryland. On September 6, 2001, the circuit court sentenced Long to five years' incarceration with all but six months suspended, in favor of five years' probation.

At the time of Long's sentence, the statute that prohibited third-degree sexual offenses was set forth in Article 27 § 464B of the Annotated Code of Maryland (1987, Repl.Vol.). In 2002, that last mentioned statutory provision was transferred, without substantive change, to Maryland Code (2002), Criminal Law Article ("Crim. Law") § 3-307. When Long was convicted in 2000, Article 27 § 792(D)(2)(ii)1 provided that anyone convicted as a third-degree child sexual offender was required to register for life as a sexual offender. Moreover, due to the nature of Long's crimes, he also met the definition of a sexually violent offender; such offenders were also required to register as a sex offender for life. *See* Article 27 § 792(D)(4)(ii)1.

On the same date that Long was sentenced, September 6, 2001, Long acknowledged receipt of an "order for probation upon release from incarceration." That order set forth various conditions of probation, one of which was that he "must register as a sex offender." The order did not specify for how long appellant was required to register.

Ten days after Long filed his acknowledgment of the conditions of his probation, he received a document entitled "Notice to Registrant of Requirements under Article 27, Section 792." That document informed Long, erroneously, that he was only required to register as a child sexual offender annually for "the next 10 years" i.e., until September 18, 2011.

Long, on January 20, 2004, received a document entitled "Notice to Registrant [-] Under Criminal Procedure Article 11-701-721." That document advised Long that he was required to register as a child sexual offender annually for life.

In 2009 and 2010, the Maryland Sex Offender Registration Act ("the Act") was amended. The amendments, insofar as here pertinent, are set forth in Maryland Code (2008 Repl.Vol., 2015 Supp.), Criminal Procedure Article ("Crim. Proc.") § 11-701(q)(1)(ii). The amendments to the Act, reclassified persons in Mr. Long's situation from a "child sexual offender" and "sexually violent offender" to a "Tier III sex offender." As amended, the Act defined a "Tier III sex offender" as a "person who has been convicted of . . . committing a violation of § 3-307(a)(3) . . . of the Criminal Law Article[.]" *See* Crim. Proc. § 11-701(q)(2). Although the amendments did not change the

3

time period for which an offender was required to register, it did require that the offender "register in person every 3 months with a local law enforcement unit" for the life of the registrant. *See* Crim. Proc. § 11-707(a)(2)(i) and (a)(4)(iii). The 2010 amendment made additional changes, which are discussed *infra.*

In his complaint requesting declaratory relief, Long asserted that by requiring him to continue to register as a sex offender after September 18, 2011, the statute violated the prohibition against *ex post facto* laws set forth in Article 17 of the Maryland Declaration of Rights. This is true, according to Long, because he was "originally required to register for ten (10) years and now must register for life."

Long asserts, in the alternative, that in the event that this Court should determine that he must remain on the Maryland Sex Offender Registry for life, we should, nevertheless, decide that he should only have to meet the reporting requirements that were in place in 2000 and not the more stringent requirements currently imposed upon third-degree sex offenders.

The circuit court, in a written opinion, declared:

> Pursuant to the 1999 amendment to the Maryland Sex Offender Registration Act (the "Maryland Act"), Mr. Long was required to register as a child sexual offender for life. 1999 Md. Laws ch. 317.

> As a result of a 2010 amendment to the Maryland Act, Mr. Long is now classified as a "[T]ier III" sex offender in Maryland which has not changed the requirement that he register for life. *See* Md. Code Ann., Crim. Proc. § 11-701(q)(1)(ii) (2013 Supp.).

> The Maryland Act has not been applied, and is not now being applied, to Mr. Long in any way so as to violate either the federal or state *ex post facto* clauses. Mr. Long is therefore obligated to continue to

4

register as a [T]ier III sex offender for life in accordance with the requirements of the Maryland Act.

## II.

### FIRST ISSUE PRESENTED

Long's first argument is phrased as follows "[t]he [c]ircuit [c]ourt erred in determining that [a]ppellant should not be removed from the MSOR [Maryland Sex Offender Registry] because the ten-year registration term to which he was obligated has expired." The key phrase in this argument is "the ten-year registration term to which he was obligated has expired." Actually, in 2001, when Long was sentenced, as a collateral consequence to pleading guilty to a third-degree sex offense involving a female under the age of 14 years, Long was "obligated" to register as a sex offender for life - not ten (10) years. In his brief, Long admits that this is what the law provided in 2001, the year that he entered his guilty plea. Long argues, however, that "lifetime registration was never a condition of" his sentence and, as a consequence, he "is entitled to the benefit of the bargain in his plea agreement, and [the Department] cannot unilaterally decide to increase [his] registration term to something other than what was agreed to, understood, and voluntarily accepted by [him] at the time of sentencing." Later in his brief, Long makes much the same point when he argues that when he "received his sentence, his plea agreement included a requirement to register on the MSOR for ten years."

There are two major problems with the above arguments. First, in the circuit court, Long never argued that at the time he pleaded guilty, he and the State agreed that

he would only be required to register as a sex offender for ten years. Therefore, the circuit court did not address that argument. *See* Md. Rule 8-131(a) (except for certain jurisdictional issues, an appellate court will ordinarily not decide any issue neither raised nor decided in the circuit court). Second, there is nothing whatsoever in the record to suggest that, at the time the plea agreement was put on the record, the State, the plea judge, or anyone else, agreed with appellant that he would only have to register as a sex offender for ten years.

In his brief, Long argues the fact that his plea agreement "included a requirement to register on the MSOR for ten years" is supported by the "Notice to Registrant of Requirements under Article 27, Section 792" that he received. The content of the notice to registrant tells us nothing whatsoever as to appellant's understanding of the registration requirements when he entered his guilty plea. That notice was received ten days after he received his sentence and 43 days after he pled guilty. In other words, at the time in 2001 when Long pled guilty, he could not possibly have relied upon the Notice to Registrant because that document was not supplied to him until more than one month afterwards.

It is of course true, as Long argues, that when a defendant pleads guilty he or she is entitled to the benefit of his/her bargain. But, nothing in this record shows that Long ever made such a "bargain" when he pled guilty. In short, there is nothing in the record to support Long's argument that when he pled guilty, he was promised that he would only have to register for ten years.

For the foregoing reasons, we hold that the circuit court did not err when, in declaring the rights of the parties, the court said that Long was required to register as a sex offender for life.

## III.

## SECOND ISSUE PRESENTED

In October of 2000, when Long committed the third-degree sexual offense against an 11-year-old victim and, at the time he was sentenced, sex offenders with such convictions were required to register annually, in person, with a local law enforcement agency and provide the following information:

(i) The registrant's name, address and place of employment;
(ii) A description of the crime for which the registrant was convicted . . .;
(iii) The date that the registrant was convicted . . .;
(iv) The jurisdiction in which the registrant was convicted . . .;
(v) A list of any aliases that have been used by the registrant; and
(vi) The registrant's Social Security number.

Md. Code Ann., Article 27, Section 792(e) (2000).

After the law was changed by the 2009 and 2010 amendments, Long was required to register with a local law enforcement agency authority every three months (rather than every six months)[1] and to file a registration statement that included:

---

[1]Long incorrectly asserts that the 2010 amendments to the Maryland Act increased his in person registration obligation from once annually. In 2006, the Maryland Act was amended to require that "child sexual offenders" and "sexually violent offenders" register in person every six months. Md. Code Ann., Crim. Proc. § 11-707(a) (2015 Supp.). The 2010 amendments increased the frequency from twice annually to quarterly. For our

(Continued…)

(1)     the registrant's full name, including any suffix, and all addresses and places where the registrant resides or habitually lives;

(2)     the name and address of each of the registrant's employers and a description of each location where the registrant performs employment duties, if that location differs from the address of the employer;

(3)     the name of the registrant's educational institution or place of school enrollment and the registrant's educational institution or school address;

(4)     a description of the crime for which the registrant was convicted;

(5)     the date that the registrant was convicted;

(6)     the jurisdiction and the name of the court in which the registrant was convicted;

(7)     a list of any aliases, former names, names by which the registrant legally has been known, traditional names given by family or clan under ethnic or tribal tradition, electronic mail addresses, computer log-in or screen names or identities, instant-messaging identities, and electronic chat room identities that the registrant has used;

(8)     the registrant's Social Security number and any purported Social Security numbers, the registrant's date of birth, purported dates of birth, and place of birth;

(9)     all identifying factors, including a physical description;

(10)    a copy of the registrant's passport or immigration papers;

(11)    information regarding any professional licenses the registrant holds;

(12)    the license plate number, registration number, and description of any vehicle, including all motor vehicles, boats, and aircraft, owned or regularly operated by the registrant;

(13)    the permanent or frequent addresses or locations where all vehicles are kept;

(14)    all landline and cellular telephone numbers and any other designations used by the sex offender for the purposes of routing or self-identification in telephonic communications;

(15)    a copy of the registrant's valid driver's license or identification card;

(16)    the registrant's fingerprints and palm prints;

---

(…continued)

purposes, however, this erroneous assertion does not matter because from the time appellant committed the sexual offense to the time he filed suit, the reporting requirement increased from once per year to once every three months.

(17)    the criminal history of the sex offender, including the dates of all arrests and convictions, the status of parole, probation, or supervised release, and the existence of any outstanding arrest warrants; and

(18)    the registrant's signature and date signed.

Md. Code Ann., Crim. Proc. § 11-706(a) (2014).

Several appellate cases in Maryland have discussed, in considerable detail, whether the Maryland Sex Offenders Registration Act ("the Act") as amended violates the *ex post facto* provisions in Article 17 of the Declaration of Rights and/or Article I, § 10 of the United States Constitution.  Those cases include: *Doe v. Dept. of Public Safety and Correctional Services* ("*Doe I*"), 430 Md. 535 (2013); *Dept. of Public Safety and Correctional Services v. Doe* (*"Doe II"*), 439 Md. 201 (2014); *In Re: Nick H.*, 224 Md. App. 668 (2015); *Connor v. State*, 223 Md. App. 1 (2015); *Quispe del Pino v. Maryland Department of Public Safety and Correctional Services*, 222 Md. App. 44 (2015); *Rodriguez v. State*, 221 Md. App. 26 (2015); *Sanchez v. State*, 215 Md. App. 42 (2013). *See also* Timothy J. Gilbert, *Retroactivity and the Future of Sex Offender Registration in Maryland*, 45 U. Balt. L.F. 164, 166-77 (2015).

In large measure, the reason for the 2009 and 2010 changes to the Act was that the United States Congress, in 2006, passed the Sex Offender Registration and Notification Act ("SORNA").  *See Doe I*, 430 Md. at 588 (Barbera, J., dissenting).  SORNA required states to set up a sex offender registry and specified what information must be contained in the registry.  In addition, SORNA authorized the United States Attorney General to issue guidelines to the states specifying additional information about sex offenders that should be compiled and contained in the registry.  *Id*.  On July 2, 2008, the Attorney

General issued such guidelines. *See* 73 Fed. Reg. 38030-38070. States that did not comply with SORNA and the guidelines, risked losing 10% of the Byrne Justice Assistant grants that would have otherwise been allowed. *See* 42 U.S.C. § 16925.[2] A review of SORNA, together with the Attorney General's guidelines, show that many of the 2009-2010 changes to the Act were required by either SORNA or the guidelines.[3]

Appellant contends that the registration requirement set forth in the amendments to the Act should not apply to him because, if so applied, the amended statute would violate his rights as guaranteed by Article 17 of the Maryland Declaration of Rights, which reads:

> That retrospective Laws, punishing acts committed before the existence of such Laws, and by them only declared criminal are oppressive, unjust and incompatible with liberty; wherefore no *ex post facto* law ought to be made; nor any retrospective oath or restriction be imposed, or required.

Article I, § 10 of the Constitution of the United States contains a similar provision that provides, in pertinent part: "No State shall . . . pass any . . . *ex post facto* Law . . . ."

Until our recent decision in the case of *In Re: Nick H.*, there was confusion in Maryland as to what test should be used in determining whether the amended Act

---

[2] On July 19, 2011, the United States Department of Justice SMART (Sexual Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking) Office certified Maryland as one of the 17 states that had substantially implemented SORNA. *See Doe II*, 439 Md. at 224.

[3] Admittedly, some of the new requirements as set forth in the 2010 amendment to the Act are unique to Maryland. *See Doe I*, *supra*.

violated Article 17 of the Maryland Declaration of Rights. The competing tests were the "intent-effects test" discussed by the Supreme Court in *Smith v. Doe*, 538 U.S. 84 (2003) ("*Smith*") and the "disadvantage" test, which was utilized by a plurality of the Court of Appeals in *Doe I*. *Doe I*, 430 Md. at 551-52, 557.

In *Smith*, the United States Supreme Court examined an Alaskan sex registration statute that went into effect in 1994 and required sex offenders and child kidnappers to register as sex offenders and to re-register every three months thereafter. 538 U.S. at 89-90. Under the Alaskan statute, such offenders were required to:

> provide his name, aliases, identifying features, address, place of employment, date of birth, conviction information, driver's license number, information about vehicles to which he has access, and post-conviction treatment history. [Alaska Stat.] § 12.63.010(b)(1). He must permit the authorities to photograph and fingerprint him. [Alaska Stat.] § 12.63.010(b)(2).

*Id*. at 90.

Because the Alaskan Act went into effect after the respondents were convicted, the Supreme Court was called upon to decide whether the *ex post facto* prohibition found in Article I, § 10 of our federal constitution prohibited Alaska from requiring the respondents to abide by the provisions of the statute. The *Smith* Court held that the rights of the respondents were not violated and in reaching that conclusion applied the intent-effects test, which involved a two-step process. The Court explained the first step as follows:

> We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a

regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.

*Id*. at 92 (alteration in original) (citations and internal quotation marks omitted).

The second step of the intent-effects test requires the court to consider several factors, including, but not limited to, the following:

[1] [w]hether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment[, 3] whether it comes into play only on a finding of *scienter*, [4] whether its operation will promote the traditional aims of punishment–retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned . . . .

*In Re: Nick H.*, 224 Md. App. at 691 (quoting from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

Appellant contends that we should not use the intent-effects test but use instead the disadvantage test, which, as already mentioned, was espoused by the plurality opinion in *Doe I*. Under that test, the "two critical elements that must be present for a law to be unconstitutional under the *ex post facto* prohibition are that the law is retroactively applied and the application disadvantages the offender." *Doe I*, 430 Md. at 551-52.

In the *In Re: Nick H.* case, before concluding that the intent-effects test must be used, the *Doe I* case was thoroughly analyzed, as follows:

In 2006, Doe pled guilty to and was convicted . . . of a single count of child sexual abuse arising out of an incident involving inappropriate contact with a thirteen-year-old student that occurred during the 1983-84 school year when Doe was a junior high school teacher. Doe was sentenced to ten years' incarceration, with all but four and one half years suspended, and

12

three years' supervised probation upon his release. Although Doe's plea agreement did not address registration as a sex offender as one of the conditions of probation, Doe was ordered at sentencing to "register as a child sex offender." He was also ordered to pay a $500 fine. Following his sentencing, Doe filed a Motion to Correct an Illegal Sentence challenging both the fine and the requirement that he register as a child sex offender. The [c]ircuit [c]ourt agreed with Doe and issued an order striking the fine and the registration requirement. Doe was released from prison in December 2008. On October 1, 2009, Doe's probation officer directed him to register as a child sex offender. Doe maintained that he did not agree with the requirement, but, against the advice of counsel, he registered as a child sex offender in early October 2009.

The requirement that Doe register as a sex offender was a result of the 2009 amendment to MSORA retroactively requiring offenders who were convicted on or after October 1, 1995, but committed a sexual offense before that date, to register for the first time. In October 2009, Doe brought a declaratory judgment suit in the circuit court, seeking an order that he was not required to register as a sex offender. Doe argued that a registration requirement would make his plea invalid as involuntary, because he was not informed that he would have to register as a sex offender when he entered into the plea agreement in 2006. The State argued that the requirement did not violate the prohibition against *ex post facto* laws. The trial court agreed with the State and ordered that Doe "shall not be removed from the sex offender registry."

After this Court affirmed the circuit court, the Court of Appeals granted *certiorari* and reversed our decision. In a plurality opinion, the Court of Appeals held that "requiring [Doe] to register as a result of the 2009 and 2010 amendments violates the prohibition against *ex post facto* laws contained in Article 17 of the Maryland Declaration of Rights." The three-judge plurality explained that "in many contexts," the Maryland Declaration of Rights offers broader protections than the United States Constitution. The plurality further determine that *ex post facto* claims under Article 17 should be analyzed by using the "disadvantage" standard, under which "any law passed after the commission of an offense which . . . in relation to that offense, *or its* consequences, alters the situation of a party to his [or her] disadvantage" violates Article 17.

Specifically, under the disadvantage standard, "Article 17 prohibits the retroactive application of laws that have the effect on an offender that is the equivalent of imposing a new criminal sanction or punishment." The

plurality determined that requiring Doe to register had "essentially the same effect" as placing him on probation, that "probation is a form of a criminal sanction," and that "applying the statute to [Doe] effectively imposes on him an additional criminal sanction" for a crime committed in the 1980s. The plurality also concluded that the dissemination of Doe's information pursuant to MSORA was "tantamount to the historical punishment of shaming," and thus imposed an additional sanction for Doe's crime. Therefore, according to the plurality, the retroactive application of MSORA to Doe, which had the effect of imposing the additional sanction of probation and shaming, violated the *ex post facto* prohibition contained in Article 17 of the Maryland Declaration of Rights.

Judge McDonald (joined by Judge Adkins) concurred with the plurality's conclusion that the statute violated Article 17, but, in contrast to the plurality, read Article 17 *in pari materia* with Article I, § 10 of the United States Constitution. Judge McDonald's concurrence stated further that "the cumulative effect of [the] 2009 and 2010 amendments of the State's sex offender registration law took that law across the line from civil regulation to an element of the punishment of offenders." Although his concurrence did not expressly state the test that was used, both the language of the concurrence and the two law review articles cited therein lead us to conclude that Judge McDonald analyzed the issue under the "intent-effects test."

224 Md. App. at 681-83 (citations omitted).

In *Doe I*, Judge Harrell, writing separately in a concurring opinion, stated that he would have denied Doe's *ex post facto* claim under the "intent-effects" test but, nevertheless, believed that Doe was entitled to relief because his 2006 plea agreement did "not indicate that sex offender registration was a term of [the] agreement." 430 Md. at

14

Judge Barbera, in her dissent, opined that the proper test to be utilized when a statute is challenged on *ex post facto* grounds was the intent-effects test.[4]  *Id*. at 583-87.

*In Re: Nick H.*, we said:

> Because *Doe I* is a plurality decision, we employ the *Marks* Rule to determine the Court's holding: "'[W]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [four judges], the holding of the court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds.'" *Wilkerson v. State*, 420 Md. 573, 594, 24 A3d 703 (2011) (quoting *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Thus the *Marks* Rule requires us to determine the common thread running through the plurality and concurring opinions of *Doe I*.  *See, e.g.*, *Derr v. State*, 434 Md. 88, 115, 73 A.3d 254 (2013) (concluding that, under the *Marks* Rule, the narrowest holding of the Supreme Court's decision in *Williams v. Illinois*, ___ U.S. ____, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), was the position representing the common point of agreement between the plurality and concurring opinions), *cert denied*, ____ U.S. ____, 134 S.Ct. 2723, 189 L.Ed.2d 762 (2014).
>
> In *Doe I*, the decision that MSORA violates the Article 17 ban on *ex post facto* laws is the common denominator representing the position taken by five judges who agreed that Doe should be granted relief.  *See* 430 Md. at 568, 578, 62 A.3d 123.  Because the *Marks* Rule directs us to the narrowest ground common to the plurality and the concurrence, Judge McDonald's interpretation of Article 17 as read *in pari materia* with the less expansive federal *ex post facto* clause represents the "position taken by those Members who concurred in the judgment on the narrowest grounds."  *See Wilkerson*, 420 Md. at 594, 24 A.3d 703 (concluding that Justice Kennedy's concurrence represented the narrowest opinion of the Supreme Court in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004)).

---

[4] Of the three judges that made up the *Doe I* plurality, only Judge Greene is presently an incumbent judge.  The two judges who joined in the plurality opinions (Bell and Eldridge), have retired as has Judge Harrell.

We recognize, however, that in reaching its holding in *Doe I*, three members of the Court applied the disadvantage test (the plurality opinion), while only two applied the intent-effects test (Judge McDonald's concurrence). *See Doe I*, 430 Md. at 568, 578, 62 A.3d 123. Thus neither test commanded a majority of the Court. <u>Nevertheless, we decide that the intent-effects test is the proper test to determine whether MSORA violates Article 17 as applied to appellant</u>.

224 Md. App. at 684-86 (footnote omitted, emphasis added).

*In Re: Nick H.*, the appellant was a minor in 2006 when he pleaded involved to one count of sexual abuse of a minor and two counts of second-degree sexual offense. 224 Md. App. at 673-74. At the time the offenses were committed, the appellant was 15 years old. *Id*. at 674. The juvenile court, after accepting his plea, placed appellant in a residential treatment center where he stayed for about ten months. *Id*. Upon release, appellant was placed on probation for three and one-half years. The juvenile court monitored appellant's progress in outpatient sex offender treatment while he was on probation. After the Maryland Sex Offender Registration Act ("MSORA") was amended in 2009 and 2010, the juvenile court, under certain specified conditions, was allowed to require that a juvenile register as a sex offender when he or she left the jurisdiction of the juvenile court. *Id*.

On October 7, 2010, the State asked the juvenile court to order *Nick H.* to register as a sex offender. *Id*. The juvenile court did so finding "by clear and convincing evidence" that Nick H. was "at significant risk [of re-offending] . . . ." *Id*. at 680. Even though appellant was not required to register as a sex offender at the time he entered his plea in 2006, we held, using the intent-effects test, that requiring appellant to register

under the amendments to the Act, did not violate Article 17 of the Maryland Declaration of Rights.

*In Re: Nick H.* was filed on September 29, 2015, which was two weeks after appellant filed his brief in this case. It is, perhaps, for this reason, that in his brief, appellant analyzes the 2009 and 2010 amendments to the Act by assuming that the intent-effects test would not be used and that we would use the disadvantage test set forth in the *Doe I* plurality opinion. But, under the holding in *Nick H.*, the disadvantage test is inapplicable when construing Article 17 of the Declaration of Rights. *See In Re: Nick H.*, 224 Md. at 685-86.

Before applying the intent-effects test to the facts in this case, it should be stressed that the case *sub judice* is distinguishable from *Smith*, *Doe I*, and *In Re: Nick H.* inasmuch as the sex offenders in those cases, at the time they committed the sex offense(s), were not required to register as sex offenders. In contrast, at the time of appellant's 2001 conviction, he was already required to register as a sex offender for life and also required to supply the State with quite a bit of personal information when he registered. Therefore, to the extent that simply being on a registry of sexual offenders might constitute the modern day equivalent of shaming (*see Doe I* plurality opinion, 430 Md. at 565), that negative consequence, because it existed prior to the statute's amendments, can have no effect on our decision as to whether appellant's *ex post facto* rights were violated. Thus, in applying the intent-effects test, we apply it only to the

aspects of the amendments to the Act that are different from the registration requirements that existed at the time of appellant's criminal acts.

As mentioned earlier, the first step when using the intent-effects test is to determine whether the legislature meant the 2009 and 2010 amendments to punish the sex offender or to simply establish civil regulatory proceedings. *See Smith*, 538 U.S. at 92. In this case it is clear that the General Assembly, by its 2009 and 2010 amendments, intended the statute to be a regulatory measure needed to accomplish two public safety regulatory objectives. *See Doe I*, 430 Md. at 587 (Barbera, J. dissenting). One objective was to incorporate the provisions of SORNA and the second intended purpose was to "further the objectives of the then-extant civil regulatory scheme [that the Maryland Court of Appeals] previously held to be non-punitive." *Id*. (citing *Young v. State*, 370 Md. 686 at 712 (2002)) (footnote omitted). "[W]here a legislative restriction is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." *Smith*, 538 U.S. at 93-94 (citations and quotation marks omitted). Additionally, there is nothing in the language used in either the 2009 or 2010 amendments that indicates a legislative intent to punish the sex offender.

We therefore conclude that the 2009 and 2010 amendments to the Act were enacted with the intent of protecting the health and welfare of the public and not to punish the offender. In other words, the General Assembly meant the amendments to be part of a civil regulatory scheme and not punitive.

In applying the intent-effects test, the Supreme Court said:

> If the intention of the legislature . . . was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Ibid.* (quoting *United States v. Ward*, 448 U.S. 242, 248-249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Because we "ordinarily defer to the legislature's stated intent," *Hendricks*, [521 U.S. 346], at 361, 117 S.Ct. 2072[(1997)], "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Hudson v. United States*, 522 U.S. 93, 100, 118 S.Ct. 488, 139 L. Ed.2d 450 (1997) (quoting *Ward*, *supra*. at 249, 100 S.Ct. 2636)[.]

*Smith*, 538 U.S. at 90 (some citations omitted).

The second step in applying the intent-effects test requires us to analyze whether the effect of the statute "overrides the legislative purpose [in such a way as] to render the statute punitive." *Doe I*, 430 Md. at 570 (footnote omitted). The first factor is whether the statute imposes an "affirmative disability or restraint." *Id*. at 572. Although the additional requirements set forth in the amendments do not impose any physical restraints upon appellant, the requirement that the appellant register once every three months rather than once every year, together with the added information that must be provided, can be said to amount to an affirmative disability. *See generally Young v. State*, 370 Md. at 713. Therefore, that factor weighs in favor of appellant, although, as in *Young*, "we ultimately conclude that the [added] burden is not so unreasonable, in light of the statute's remedial aims, that it converts the statute into a punitive one." *Id*.

The second factor (whether the added requirements have been historically viewed as punishment) weighs in favor of the State. Providing detailed information to a local

law enforcement agency coupled with the requirement that the offender appear in person once every three months has historically not been viewed as punishment; instead, such requirements have historically been viewed as serving a regulatory purpose, i.e., to increase the safety of the public from known violent sex offenders. *Smith*, 538 U.S. at 98-99.

The third factor also weighs in favor of the State because no finding of *scienter* is required in order for the additional registration requirements to apply. All Tier III sex offenders, without regard to the offenders' state of mind, must comply. *See Young*, 370 Md. at 715.

The fourth factor (whether the statute will promote the traditional goals of punishment: retribution and deference), weighs in favor of appellant. Although not retributive, the additional requirements set forth in the amendments can be said to serve a deterrence function by continuously reminding the offender of the ever-present interest of law enforcement in the registrant's behavior. *See In Re: Nick H.*, 224 Md. App. at 695 and *Young*, 370 Md. at 712. This factor, however, is afforded slight weight because, before the amendments went into effect, appellant already had to provide significant information to local law enforcement agencies once per year.

The fifth factor (whether the behavior to which the amendment applies is already a crime) is one that also favors the appellant because, quite obviously, in order to be required to provide the additional information, one must be a convicted sex offender.

That factor also is accorded limited weight. In *Young*, 370 Md. at 714, the Court of Appeals said:

> There are many occasions when legislatures attach both criminal and civil sanctions to the same act or omission. The fact that the statute is triggered by a criminal conviction does not undermine the Legislature's intent to create a sex offender registry to aid in the civil purpose . . . . Thus, although the connection between sex offender registration and past criminal behavior is clear, we accord only limited weight to this factor in light of the equally strong connection between registration and legitimate civil purposes.

The sixth factor (whether an alternative purpose - other than punishment - may be assigned for the added burden) strongly favors the State because the amendments clearly have a purpose other than punishment. That alternative purpose was to protect the public from the grave threat of repeat sex offenders by requiring convicted sex offenders to supply added information and to present themselves more frequently to law enforcement agencies so that their whereabouts can always be determined.

The seventh factor (whether the burden appears excessive in relation to the alternative purpose), favors the State. In light of the serious problems caused by repeat sex offenders and the attendant need to be aware of the location and activities of the offender, the additional requirements set forth in the 2009-2010 amendments, while perhaps inconvenient for the offender, are not excessive.

After balancing all relevant factors, we conclude that appellant has failed to produce "the clearest proof" that despite the non-punitive intent of the amendments, the

effect of the 2009 and 2010 changes in the Act are punitive. *See Smith*, 538 U.S. at 90.[5]

Because the added burdens brought about by the amendments do not constitute punishment forcing appellant to comply with the new requirements, they did not violate appellant's rights as set forth in Article 17 of the Maryland Declaration of Rights.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

.

**JUDGMENT AFFIRMED; COSTS**

**TO BE PAID BY APPELLANT.**

---

[5] For a comprehensive review of scores of cases involving the intent-effects test, *see* William M. Howard, *Validity of State Sex Offender Registration Laws Under Ex Post Facto Prohibitions*, 63 ALR 6th 351 (2013). Using that test, all federal Circuit Courts of Appeals and a great many state appellate courts have found no *ex post facto* violations when the sex offender registration law is applied retroactively. There are, however, cases discussed in the annotation where *ex post facto* violations were found in the application of state Sexual Offender Registration statutes. As far as we have been able to determine, however, none of those cases involved offenders who, prior to the amendment of the statute, already had to register for life but, after the amendment, had to divulge more information and report to a law enforcement agency more frequently.